# United States District Court
**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | |
|---|---|
| OKLAHOMA LAW ENFORCEMENT RETIREMENT SYSTEM <br><br> v. <br><br> ADEPTUS HEALTH INC., et al. | § <br> § <br> § Civil Action No. 4:17-CV-00449 <br> § Judge Mazzant <br> § <br> § |

## MEMORANDUM OPINION AND ORDER

Pending before the Court are four motions for appointment of lead counsel (Dkt. #19, 21, 49, 73). The Court, having considered the relevant pleadings and relevant case law, finds that the Motion of Alameda County Employees' Retirement Association and Arkansas Teacher Retirement System for Appointment as Lead Plaintiff, Approval of Selection of Counsel, and Consolidation of Related Actions (Dkt. # 19) should be granted.

## BACKGROUND

On October 27, 2016, named Plaintiff Oklahoma Law Enforcement Retirement System filed this federal securities class action "on behalf of all person who purchased the Class A common shares of [Adeptus Health, Inc. ("Adeptus Health")] pursuant to [Adeptus Health's] secondary public offering on or about July 31, 2015 . . . and on behalf of purchasers of [Adeptus Health's] common shares between April 23, 2015 and November 16, 2015." ("*Oklahoma* Class") (Dkt. #1 at 1). This action was consolidated with: (1) an action filed by Laborers' Local 235 Benefit Funds "on behalf of all persons or entities that purchased or otherwise acquired [Adeptus Health] Class A common shares between June 25, 2014 and November 1, 2016," ("*Laborors' Local* Class"); (2) an action filed by Winston Kim "on behalf of all persons and entities . . . who purchased or otherwise acquired the publicly traded securities of [Adeptus Health] from April 29,

2016 through March 1, 2017," ("*Kim* Class"); and (3) an action filed by Sascha Troll "on behalf of a class consisting of all persons . . . who purchased or otherwise acquired [Adeptus Health] securities between April 29, 2016 and March 1, 2017," ("*Troll* Class"). Adeptus Health filed bankruptcy petitions on April 19, 2017, in the United States Bankruptcy Court for the Northern District of Texas. The Court stayed the claims as to Adeptus Health (Dkt. #51); however, the parties urge the Court to decide the motions for appointment of lead plaintiff in order to represent the class in the bankruptcy proceedings (Dkt. # 80).

Six different movants have filed eight different motions seeking appointment as lead plaintiff, with their choice of lead counsel, under the Private Securities Litigation Reform Act of 1995 ("PSLRA"). Three movants withdrew from lead plaintiff consideration, and three movants remain: (1) David Swehla, Rodeo Plastic Bag & Film Inc., Wissam Mattar, Heriberto Vale, and Yixin Shi ("Adeptus Investor Group"); (2) Alameda County Employees' Retirement Association ("ACERA") and Arkansas Teacher Retirement System ("Arkansas Teacher") (collectively "Retirement Group"); and (3) Michigan Laborers' Pension Fund ("Pension Fund").

**APPLICABLE LAW**

The PSLRA establishes the procedure for appointing a lead plaintiff in an action "that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(1). The PSLRA requires that within twenty days after filing the class action, "the plaintiff or plaintiffs shall cause to be published, in a widely circulated national business-oriented publication or wire service, a notice advising members of the purported plaintiff class: (1) of the pendency of the action, the claims asserted therein, and the purported class period; and (2) that, not later than [sixty] days after the date on which the notice is published, any member of the purported class may move the court to serve as lead plaintiff of the purported class." 15 U.S.C. §

78u-4(a)(3)(A)(i). The Court must then appoint the "most capable of adequately representing the interests of class members." 15 U.S.C. § 78u-4(a)(3)(B)(i). After deciding any pending motion to consolidate the related actions, the Court shall consider any motion made by a purported class member to serve as lead plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(ii).

The PSLRA requires all proposed lead plaintiffs to submit a sworn declaration to assure the Court that the proposed plaintiff: (1) has suffered financial harm; (2) is not a serial litigant; and (3) is interested and able to serve as lead plaintiff. 15 U.S.C. § 78u-4(a)(2)(A). There is then a "rebuttable presumption" that the most adequate plaintiff has: (1) either filed the complaint or made a motion in response to a notice; (2) the largest financial interest in the relief sought by the class during the proposed class period; and (3) otherwise satisfied the requirements of Rule 23 of the Federal Rules of Civil Procedure. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). The presumption can be rebutted only when a class member offers proof that the presumptive lead plaintiff "will not fairly and adequately protect the interests of the class" or is "subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

## ANALYSIS

Three movants request that the Court appoint them as lead plaintiff and approve their choice of lead counsel. The Court will address the request of each movant.

### I. Lead Plaintiff

The Court will go through the analysis of the three factors contained in Section 78u-4(a)(3)(B)(iii) to determine which party is presumed to be the most adequate plaintiff.

#### A. Procedural Requirements

There is no dispute that the Retirement Group and the Pension Fund met the procedural requirements of Section 78u-4(a)(3)(A)(i) because both the Retirement Group and the Pension

3

Fund timely moved for appointment of lead counsel. However, the parties dispute whether the Adeptus Investor Group filed its motion in a timely fashion.

The Retirement Group and the Pension Fund argue that notice went out on October 27, 2016. The notice informed potential plaintiffs that, if they wanted to be considered for appointment as lead plaintiff, they needed to file a motion by December 27, 2016. Because the Adeptus Investor Group filed its renewed motion on July 13, 2017, the Retirement Group and the Pension Fund argue that Adeptus Investor Group's renewed motion is late pursuant to Section 78u-4(a)(3)(A)(i).[1]

The Adeptus Investor Group responds that because it moved to be appointed as lead plaintiff in the *Kim* action and on behalf of the *Kim* Class and *Troll* Class, its motion is timely. The Adeptus Investor Group asserts that it filed a motion for appointment as lead plaintiff within sixty days of the notice filed in the *Kim* action. (Dkt. # 81 at 3). Adeptus Investor Group argues that the allegations in the *Kim* and *Troll* actions are "that, during a class period running from April 29, 2016 through March 1, 2017, Defendants failed to disclose material weaknesses in [Adeptus Health's] internal control over financial reporting." *Id.* at 2. Adeptus Investor Group compares these allegations to the contentions in the *Oklahoma* and *Laborers' Local* action that "during a class period running from June 25, 2014 through November 1, 2016, Defendants misled Adeptus

---

[1]Adeptus Investor Group initially filed a motion for appointment as lead counsel in the *Kim* case on May 9, 2017. *Kim v. Adeptus Health, Inc.*, 6:17-cv-150-RWS, Dkt. #16 (E.D. Tex. May 9, 2017). This motion was not transferred into the *Oklahoma* case after consolidation, and there is no official motion withdrawing the motion. In its second motion, the Adeptus Investor Group stated that the Adeptus Investor Group simply renewed its motion for clarity, yet the argument in support of appointment changed. The Adeptus Investor Group initially argues it should be appointed as lead plaintiff because it is the presumptive lead plaintiff. However, the second motion asks to be appointed co-lead plaintiff because the *Kim* Class and *Troll* Class needed separate representation. At the hearing on the motions to appoint lead counsel, the Adeptus Investor Group only argued their second motion, and asked to be appointed co-lead plaintiff. Accordingly, the Court assumes that the Adeptus Investor Group is moving forward on their renewed motion. Notwithstanding this assumption, the Retirement Group and the Pension Fund also argue that the Adeptus Investor Group's first motion is untimely, and the analysis in this section will also address whether this first motion is timely.

shareholders about widespread predatory billing practices and failed to advise them that [Adeptus Health's] financial statements were not prepared in conformity with GAAP." *Id.* (internal quotations omitted). As such, the Adeptus Investor Group contends that because the allegations are different, compliance with the deadline in the *Kim* action is appropriate and sufficient. *Id.*

As mentioned above, the PSLRA requires plaintiffs filing a securities class action publish notice of the pendency of the suit within twenty days after the complaint is filed. Here, no party challenges the fact that notice was timely filed in this case. As such, the Court will continue to the next procedural requirement of the PSLRA.

After notice is filed, any party wishing to serve as lead plaintiff must file a motion within sixty days of the publication of that notice. 15 U.S.C. § 78u-4(a)(3)(A)(i)(II). Any supplement or augmentation of the motion must also take place within the sixty-day deadline. *In re Telxon Corp. Sec. Litig.*, 67 F. Supp. 2d 803, 819 (N.D. Oh. 1999). The purpose of this requirement is to ensure that the lead plaintiff is appointed as early as possible, and to expedite the lead plaintiff process. *See, e.g.*, *In re XM Satellite Radio Holdings Sec. Litig.*, 237 F.R.D. 13 (D.D.C. 2006) (citations omitted); *In re Telxon*, 67 F. Supp. 2d at 818–19; *Lax v. First Merchants Acceptance Corp.*, 1997 WL 461036, at *4 (N.D. Ill. Aug. 11, 1997) (citations omitted). Thus, compliance with the procedural requirements of the PSLRA is mandatory and should be strictly enforced. *See, e.g.*, *Skworts v. Crayfish Co.*, 2001 WL 1160745, at *5 (S.D.N.Y. Sept. 28, 2001); *In re MicroStrategy Inc. Sec. Litig.*, 110 F. Supp. 2d 427, 440 (E.D. Va. 2000).

However, if a new or an amended complaint is filed, it is possible that a new notice and an additional sixty days is necessary. *See, e.g.*, *In re Telxon*, 67 F. Supp. 2d at 818; *Teamsters Local 445 Freight Div. Pension Fund v. Bombardier, Inc.*, 2005 WL 1322721, at *2 (S.D.N.Y. June 1, 2005). Nevertheless, a new notice is not automatic because issuing a new notice after each new

complaint or amendment could cause "appointment of lead counsel [to] be delayed indefinitely . . . [, and s]uch result would clearly thwart the intent of the PSLRA." *In re Telxon*, 67 F. Supp. 2d at 818 (second alteration in original) (quoting *Steiner v. Weiser*, No. 1:98-cv-0264, slip op. at 11 (N.D. Ohio July 16, 1998)). If a new complaint is filed that includes "entirely new factual and legal allegations against [defendants], as to separate transactions, affecting a new class of Plaintiffs," then a new notice and an additional sixty-day period is justified. *Teamsters*, 2005 WL 1322721, at *2. A*ccord In re MicroStrategy*, 110 F. Supp. 2d at 440; *Skwortz*, 2001 WL 1160745, at *5 n.7. In other words, "[w]here membership of a class is substantially expanded by the filing of an amended complaint that *adds new claims*, fairness dictates that those new class members ought to be informed of the existence of pending claims that may affect their rights." *Teamsters*, 2005 WL 1322721, at *3. The reasoning behind requiring a new notice in these situations is that "entire classes of potential lead plaintiffs are left out of the notice procedure," which could "potentially exclude qualified movants from the lead plaintiff selection process." *Id.* at *2–3.

Here, the complaints in the *Kim* and *Troll* actions do not necessitate publishing a new notice with a new sixty-day period. After examining the complaints, the failure to disclose material weaknesses in Adeptus Health's internal control over financial reporting is contained in the *Oklahoma* Complaint and also the *Laborers' Local* Complaint.[2] (Dkt. #1, ¶¶ 97–97); *Laborers' Local v. Adeptus Health Inc.*, 6:16-cv-1391, Dkt. #1, ¶¶ 101–05 (E.D. Tex. Dec. 22, 2016). While the allegations are more expansive in the *Kim* and *Troll* Complaints, they are not entirely new legal

---

[2]Even if the first motion or the renewed motion were timely filed, the Adeptus Investor Group should not be appointed co-lead plaintiff. The Adeptus Investor Group makes the same argument for its appointment as a co-lead plaintiff to represent the *Kim* Class and *Troll* Class as it did to argue that its motion was timely: that the allegations in the *Kim* and *Troll* actions are different from the allegations in *Oklahoma* and *Laborers' Local*. However, the Court finds this argument unpersuasive when considering the timeliness of the motion, and similarly finds the argument unpersuasive when considering the substantive argument for co-lead plaintiff.

6

or factual allegations nor do they include an entirely new class of securities. The new complaints changed the class period, but simply changing the class period does not necessitate a new notice be sent out. *Teamsters*, 2005 WL 1322721, at *2. As such, all potential plaintiffs in the *Kim* Class and *Troll* Class had adequate notice to file a motion for appointment as lead plaintiff. Accordingly, the appropriate time to respond was sixty days from the notice being published in the *Oklahoma* action, and the Adeptus Investor Group motion was late.

Further, even if the Court accepted the argument that the time should run from the notice in the *Kim* action, the motion before the Court is still untimely. The Adeptus Investor Group filed its motion (Dkt. #73) on July 13, 2017, over two months after motions to appoint lead plaintiff were due in the *Kim* action. Adeptus Investor Group argues that it just "renewed its motion to give notice to the Court and all parties of the group's continued willingness to serve as Lead Plaintiff on behalf of *Kim-Troll* Class Period Investors." (Dkt. #81 at 4). However, the Adeptus Investor Group did not simply file an identical motion in the consolidated action for clarity, but expanded and changed its arguments: the Adeptus Investor Group initially sought appointment as lead plaintiff, but now seeks appointment as co-lead plaintiff. *Compare Kim v. Adeptus Health, Inc.*, 6:17-cv-150-RWS, Dkt. #16 (E.D. Tex. May 9, 2017), *with* (Dkt. #73). A motion for appointment as lead plaintiff "cannot be supplemented or augmented beyond the sixty (60) day window established by the PSLRA." *In re Telxon*, 67 F. Supp. 2d at 819. Therefore, even if the Court considered the appropriate time period to start after the notice filed in the *Kim* action, the Adeptus Investor Group untimely filed its renewed motion, which is the motion Adeptus Investor Group argued at the hearing. Therefore, the Court will not appoint Adeptus Investor Group as the lead plaintiff, or a co-lead plaintiff for this class.

### B. Largest Financial Interest

If a motion is timely filed, the presumptive lead plaintiff must have the largest financial interest. 15 U.S.C. § 78u-4(a)(3)(B)(iii). The Retirement Group argues that it has the largest financial interest of any other movant, which is not contested by any of the movants. Therefore, the Court is satisfied that the Retirement Group has the largest financial interest, followed by the only remaining movant, the Pension Fund.[3]

### C. Rule 23 Requirements

Finally, if a plaintiff has timely filed a motion and asserts the largest financial interest, it must also satisfy the requirements of Federal Rule of Civil Procedure 23 to be the presumptive lead plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(iii). "For the purposes of the lead plaintiff analysis, only the typicality and adequacy prongs of Rule 23 are relevant." *Marcus v. J.C. Penney Co.*, 6:13-cv-736-RWS-KNM, Dkt. #62, slip op. at 9 (E.D. Tex. Feb. 28, 2014) (citing *Buettgen v. Harless*, 263 F.R.D. 378, 381 (N.D. Tex. 2009)). The Retirement Group argues that it is the presumptive lead plaintiff because it timely moved to be appointed as lead plaintiff, it has the largest financial interest, and it meets the requirements set out in Federal Rule of Civil Procedure 23. The Pension Fund does not contest that the Retirement Group's claims are typical of the class, but argues that the Retirement Group does not fairly and adequately represent the class. As such, the Pension Fund argues that the Retirement Group is not the presumptive lead plaintiff; instead, it argues that the Pension Fund is the presumptive lead plaintiff.

---

[3]The Adeptus Investor Group has a larger financial interest than the Pension Fund; however, because the Court previously determined that its motion is untimely, the Court will not consider the Adeptus Investor Group in determining the largest financial interest.

### i. Typicality

Both the Retirement Group and the Pension Fund assert that their claims are typical of the class. Neither challenges the other's claims of typicality. The Court is satisfied that both the Retirement Group and the Pension Fund's claims are typical of the class; in other words, they have "the same essential characteristics as those of the other class members." *Marcus*, 6:13-cv-736-RWS-KNM, Dkt. #62, slip op. at 9 (quoting *Buettgen*, 263 F.R.D. at 381).

### ii. Fair and Adequate Representation

The Pension fund argues that the Retirement Group will not fairly and adequately represent the class because it is an improper group under the PSLRA and because Arkansas Teacher is a professional plaintiff barred from serving as a lead plaintiff pursuant the PSLRA. The Court will address each argument.

First, the Pension Fund contends that the Retirement Group is not entitled to the presumption of lead plaintiff because it is not a proper group within the meaning of the statute. (Dkt. #27 at 3). The Pension Fund argues that courts interpret a "group of persons" to "requir[e] at maximum a small group with the largest financial interest in the outcome of the litigation and a pre-litigation relationship based on more than their losing investment." *Id.* (internal citations and quotations omitted). Thus, the Pension Fund asserts that the Court must consider whether the Retirement Group has made an evidentiary showing that the group will be able to function cohesively and efficiently manage the litigation together. *Id.* (citing *Marcus*, 6:13-cv-736-RWS-KNM, Dkt. #62, slip op. at 11). The Pension Fund contends that the Retirement Group has not made that showing. The Retirement Group responds that it provided evidence that shows the pre-motion communication between ACERA and Arkansas Teacher, the benefits of the Retirement

Group's experience with PSLRA, the oversight of counsel, and Retirement Group's commitment to devote resources to the class.

The PSLRA was passed in December 1995 in response "to significant evidence of abusive practice and manipulation by class action lawyers in private securities lawsuits." *In re Landry's Seafood Rests., Inc.*, 2000 U.S. Dist. LEXIS 7005, at *10 (S.D. Tex. Mar. 30, 2000) (citing H.R. REP. NO. 104-369, at 21 (1995), *reprinted in* 1995 U.S.C.A.A.N. 730 at 731) ("Conf. Rep."). The PSLRA expressly allows for a "person or group of persons" to be appointed lead plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). Generally, courts permit a "group of persons" to serve as lead plaintiff as long as the group will adequately represent the class. *Marcus*, 6:13-cv-736-RWS-KNM, Dkt. #62, slip op. at 11 (citing *Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 589 F. Supp. 2d 388, 392 (S.D.N.Y. 2008)). Courts look closely to determine a group's adequacy when the group is comprised of unrelated individuals. "[W]hen unrelated investors are cobbled together, the clear implication is that counsel rather than the parties, are steering the litigation." *Buettgen*, 263 F.R.D. at 380 (alteration in original) (quoting another source) (internal quotation marks omitted). *Accord In re Level 3 Commc'ns, Inc. Sec. Litig.*, 2009 U.S. Dist. LEXIS 44706, at *12 (D. Colo. May 4, 2009) (citing *In re Donnkenny Inc. Sec. Litig.*, 171 F.R.D. 156, 157–58 (S.D.N.Y. 1997)).

However, a group may submit evidence to suggest that even though the individuals are unrelated, the group is still able to act cohesively, effectively manage the litigation, and adequately represent the class. *See, e.g.*, *id.*; *In re Cendant Corp. Litig.*, 264 F.3d 201, 266–67 (explaining various cases precluded unrelated individuals from serving as a lead plaintiff, yet ultimately holding that unrelated individuals can serve as lead plaintiff if the group will "fairly and adequately protect the interest of the class."); *Stein v. Match Grp., Inc.*, 2016 WL 3194334, at *5 (N.D. Tex.

June 9, 2016) (finding that unrelated persons can serve as lead plaintiff if the group would best serve the interest of the class); *Marcus*, 6:13-cv-736-RWS-KNM, Dkt. #62, slip op. at 11 (using existence of a pre-litigation relationship as one factor to determine the adequacy of a group to effectively manage the litigation, independent of counsel). The evidence should explain "how the group was formed; how its members would function collectively; how potential disputes among the members or counsel would be resolved; and the mechanism by which the group members and counsel would communicate with one another about the litigation." *In re Level 3*, 2009 U.S. Dist. LEXIS 44706, at *15 (citing *In re Baan Co. Sec. Litig.*, 186 F.R.D. 214, 225 (D.D.C. 1999)).

Here, the Retirement Group submitted a joint declaration stating that the group formed as a result of ACERA and Arkansas Teacher independently speaking with their counsel about serving as lead plaintiff. Through the discussion with their counsel, ACERA and Arkansas Teacher learned about the other's interest, and accordingly formed the Retirement Group. The same day the Retirement Group's motion was filed, representatives of ACERA and Arkansas Teacher participated in a conference call to discuss the action. During this call, ACERA and Arkansas Teacher discussed:

> the facts and the merits of the claims against the Defendants; the strategy for the prosecution of this litigation; and our interest in serving jointly as Lead Plaintiff in order to, among other things, ensure that the class' claims will be efficiently and zealously prosecuted through our oversight of our proposed Lead Counsel, Bernstein Litowitz and Kessler Topaz.

(Dkt. #19 Ex. 2 at 7). Additionally, the declaration claims that their "experience, . . . resources, and ability to deliberate and engage in joint decision-making will materially benefit and advance the interests of the class in this case." *Id.* Ex. 2 at 7. ACERA and Arkansas Teacher further state that they are "like-minded, sophisticated institutional investors." *Id.* Ex. 2 at 7. The Retirement Group also submitted a supplemental joint declaration (Dkt. #34 Ex. 4). This declaration stated

that the Retirement Group has implemented specific steps to ensure the effective supervision of counsel, and that Arkansas Teacher developed effective methods and practice to oversee lead counsel's work. *Id.* at 3–4.

In addition to the declarations, the Retirement Group has participated in the bankruptcy proceeding. Dkt. #80 Ex. B; s*ee also In re ADPT DFW Holdings, LLC*, No. 17-31432. In the bankruptcy case, the Retirement Group has filed objections on behalf of the class. Dkt. #80 Ex. B; s*ee also In re ADPT DFW Holdings, LLC*, No. 17-31432. The Retirement Group has also hired attorneys who have made appearances in the bankruptcy case. *In re ADPT DFW Holdings, LLC*, No. 17-31432.

While the declarations on their own may be conclusory and insufficient to show that the Retirement Group can act cohesively, the Retirement Group's actions in the bankruptcy proceeding demonstrate its ability to cohesively represent the class. *See Marcus*, 6:13-cv-736-RWS-KNM, Dkt. #62, slip op. at 11 (holding a substantially similar declaration insufficient to reassure the court that the group would be able to effectively manage the litigation when the record suggested minimal, lawyer-driven participation in the litigation); *Eichenholtz v. Verifone Holdings, Inc.*, 2008 WL 392589, at *9 (N.D. Cal 2008 Aug. 22, 2008) (explaining that a similar declaration was unsatisfactory to prove the group would be able to make joint decisions). Even though the Court does not know specifically "how its members would function collectively, [or] how potential disputes among the members or counsel would be resolved," the Court is satisfied that the Retirement Group can work together to represent the interests of the class.

Further, permitting ACERA and Arkansas Teacher to join as a group is consistent with the purposes of the PSLRA. The purpose of the PSLRA is to reduce abuses in securities class action litigation by preventing lawyer-driven litigation. *In re Landry's*, 2000 U.S. Dist. LEXIS 7005, at

*10; *In re Unumprovident Corp. Sec. Litig.*, 2003 U.S. Dist. LEXIS 24633, at *20–21 (E.D. Tenn. Nov. 6, 2003). Appointing a group that was put together for the sole purpose of creating the largest interest raises concern because it is possible the lawyers will have a greater interest than the actual plaintiffs. *See In re Alcatel Alsthom*, 1999 WL 33756548, at *3 (E.D. Tex. June 7, 1999) (discussing the Conference Report in terms of the professional plaintiff bar; however, these purposes are also applicable to concerns around groups); *Eichenholtz*, 2008 WL 392589, at *9. The individual losses of both ACERA and Arkansas Teacher "surpass those of any other putative lead plaintiff here." *Stein*, 2016 WL 3194334, at *5. This removes "any real concern that this group of two class members was formed only to manufacture the greatest financial interest in order to be appointed lead plaintiff," and each individual plaintiff will remain invested in the outcome of the litigation. *Id.* (citing another source) (internal quotations omitted). Further, ACERA and Arkansas Teacher are both institutional investors, which are typically sophisticated enough to control attorneys in securities fraud litigation. *Pfau v. Reliant Energy, Inc.*, 2002 U.S. Dist. LEXIS 27777, at *9–10 (S.D. Tex. Aug. 27, 2002). Finally, this is a small group of two members, which is small enough that it would not make decision-making unwieldy, and would not unreasonably disrupt the Retirement Group's ability to control the lawyers. *Bell v. Ascendant Sols., Inc.*, 2002 U.S. Dist. LEXIS 6850, at *15 (N.D. Tex. Apr. 17, 2002). Therefore, there is very minimal concern, if any, that the Retirement Group is a lawyer-driven group that the plaintiffs would be unable to control.

Next, the Pension Fund argues that Arkansas Teacher is a professional plaintiff and should be barred from serving as lead plaintiff. The Retirement Group contends that (1) the professional plaintiff bar does not apply to institutional investors; and (2) if it does apply to institutional investors, the Court should use its discretion, and not apply it to Arkansas Teacher.

13

The PSLRA provides: "Except as the court may otherwise permit, consistent with the purposes of this section, a person may be a lead plaintiff . . . in no more than 5 securities class actions brought as plaintiff class actions pursuant to the Federal Rules of Civil Procedure during any 3-year period." 15 U.S.C. § 78u-4(a)(3)(B)(vi). There is a split among courts about whether or not the restriction on professional plaintiffs applies to institutional investors. *See generally, e.g.*, *Knurr v. Orbital ATK, Inc.*, 220 F. Supp. 3d 653 (E.D. Va. 2016); *In re Extreme Networks Inc. Sec. Litig.*, 2016 WL 3519283 (N.D. Cal. June 28, 2016). The plain meaning of the statute does not create a blanket exception for intuitional investors as it includes language including any person that may be a lead plaintiff, which encompasses institutional investors. *See In re Enron*, 206 F.R.D. 427, 443–44 (S.D. Tex. 2002) (citing *In re Telxon*, 67 F. Supp. 2d at 820–21). However, in discussing the restriction on professional plaintiffs, the Conference Report states: "Institutional investors seeking to serve as lead plaintiffs may need to exceed this limitation and do not represent the type of professional plaintiff this legislation seeks to restrict." Conf. Rep. at 35. The Report continues to say that "the Conference Committee grants courts discretion to avoid the unintended consequences of disqualifying institutional investors from serving more than five times in three years." Conf. Rep. at 35.

The Court is persuaded, as were other courts within this circuit, that the Conference Report cannot override the language of the statute. *In re Enron*, 206 F.R.D. 427, 443–44 (S.D. Tex. 2002) (citing *In re Telxon*, 67 F. Supp. 2d at 820–21; *Thompson v. Shaw Grp., Inc.*, 2004 U.S. Dist. LEXIS 25641, at *6 (E.D. La. Dec. 14, 2004). Further, the language of the Conference Report also seems to suggest that there should not be a blanket exception, but allows courts to use discretion with institutional investors. Accordingly, the fact that the proposed lead plaintiff is an institutional investor is merely a factor to consider when the Court is using its discretion to apply

14

the bar, as opposed to an exception to the bar. *In re Enron*, 206 F.R.D. at 443–44 (citing *In re Telxon*, 67 F. Supp. 2d at 820–21).

Here, the Court exercises its discretion in this case and does not bar Arkansas Teacher from serving as lead plaintiff of the class. The reasons behind the PSLRA are to prevent lawyer-driven litigation and to ensure that the plaintiff has the ability to actively participate in the litigation. *See In re Unumprovident*, 2003 U.S. Dist. LEXIS 24633, at *20–21. Again, Congress was concerned that lawyers would group together professional plaintiffs who "typically owned a deminimus number of shares," which could cause the lawyers to have a larger financial interest "than the putative plaintiffs in the outcome of the action," leaving plaintiffs "with very little control over their attorneys." *See In re Alcatel Alsthom*, 1999 WL 33756548, at *3. However, there is sufficient evidence before the Court that the Retirement Group is able to actively participate in the litigation. Arkansas Teacher has a large enough interest, individually, to maintain control over its attorneys and to remain invested in the outcome of the case. Moreover, as previously mentioned, Arkansas Teacher is an institutional investor, and institutional investors are generally sophisticated enough to control attorneys in securities fraud litigation. *Pfau*, 2002 U.S. Dist. LEXIS 27777, at *9–10. While the Court does not apply a complete bar to institutional investors, it is a factor to consider, which weighs in favor of not applying the bar. *In re Enron*, 206 F.R.D. at 443–44 (citing *In re Telxon*, 67 F. Supp. 2d at 820–21); *Thompson*, 2004 U.S. Dist. LEXIS 25641, at *6.

Additionally, certain courts have also been concerned that a professional plaintiff will be stretched too thin to be able to actively participate in the litigation. *Thompson*, 2004 U.S. Dist. LEXIS 25641, at *21 (finding the risk that the professional plaintiff would be stretched too thin to be a reason not to appoint the proposed plaintiff). However, that concern is not prevalent in this case. First, Arkansas Teacher has been able to adequately represent a class in the various cases

15

where it has been appointed lead plaintiff. (Dkt. #34 Ex. 4 at 4–5). Further, Arkansas Teacher is representing the class alongside ACERA. Both Arkansas Teacher and ACERA have a level of expertise, which allow them to represent the class sufficiently and understand their role in overseeing their attorneys. As such, because the professional plaintiff bar does not apply to Arkansas Teacher and the Court considers the Retirement Group a proper group, the Retirement Group is able to fairly and adequately represent the class.

Accordingly, because the Retirement Group timely filed its motion, has the largest financial interest, and satisfies the requirements of Federal Rule of Civil Procedure 23, the Retirement Group is the presumptive lead plaintiff. Further, the presumption has not been overcome. Therefore, the Court appoints the Retirement Group as lead plaintiff in this action.

## II. Lead Counsel

The Retirement Group seeks to appoint Bernstein Litowitz and Kessler Topaz as co-lead counsel for the class and George L. McWilliams as liaison counsel for the class. The Retirement Group instructed Bernstein Litowitz and Kessler Topaz to enter into a Joint Prosecution Agreement. The Court has reviewed the resumes provided for each attorney, and is satisfied that each could adequately represent the plaintiff in this action.

## CONCLUSION

It is therefore **ORDERED** that the Motion of Alameda County Employees' Retirement Association and Arkansas Teacher Retirement System for Appointment as Lead Plaintiff, Approval of Selection of Counsel, and Consolidation of Related Actions (Dkt. #19) is hereby **GRANTED**. The Retirement Group's choice of lead counsel and liaison counsel are hereby **APPOINTED**. Accordingly, Michigan Laborers' Pension Fund's Motion for Consolidation, Appointment as Lead Plaintiff and for Approval of its Selection of Lead Counsel (Dkt. #21, 49)

and the Motion of Adeptus Investor Group to be Appointed Lead Plaintiff and to Approve Proposed Lead Plaintiff's Choice of Counsel (Dkt. #73) are hereby **DENIED**.

Therefore, Lead Plaintiff and Lead Counsel are hereby authorized to take all necessary or appropriate steps on behalf of the proposed class to protect and preserve the rights and claims of the class in the jointly administered chapter 11 proceedings of Adeptus Health, Inc. and its affiliated chapter 11 debtors ("the Debtors"), styled as *In re ADPT DFW Holdings LLC, et al.*, Case No. 17-31432 (Bankr. N.D. Tex.).

**SIGNED this 31st day of August, 2017.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE