# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | |
|---|---|
| OKLAHOMA LAW ENFORCEMENT RETIREMENT SYSTEM <br><br> v. <br><br> ADEPTUS HEALTH INC., et al. | § <br> § <br> § Civil Action No. 4:17-CV-00449 <br> § Judge Mazzant <br> § <br> § <br> § |

## MEMORANDUM OPINION AND ORDER

Pending before the Court are the Executive Defendants'[1] Motion to Dismiss (Dkt. #119), Sterling's[2] Motion to Dismiss the Class Action Complaint (Dkt. #120), the Underwriter Defendants'[3] Motion to Dismiss the Consolidated Class Action Complaint (Dkt. #121), the Director Defendants'[4] Motion to Dismiss the Consolidated Class Action Complaint (Dkt. #123), and Defendants' Motion for Oral Argument on Motions to Dismiss (Dkt. #147). The Court, having considered the motions and the relevant pleadings, finds that the Executive Defendants' Motion to Dismiss, the Underwriter Defendants' Motion to Dismiss, and the Director Defendants' Motion to Dismiss should be granted in part and denied in part, Sterling's Motion to Dismiss should be denied, and the Defendants' Motion for Oral Argument should be denied as moot.

---

[1] The "Executive Defendants" are: Tom Hall, former Chairman of the Board and Chief Executive Officer from March 2012 to November 8 2016 of Adeptus Health, Inc.; Timothy Fielding, former Chief Financial Officer from January 2013 to July 28, 2016; and Graham Cherrington, former Chief Operating Officer from May 2012 to December 2016.
[2] Sterling refers to SC Partners III, L.P., SCP III AIV THREE-FCER Conduit, L.P., and SCP III AIV THREE-FCER, L.P. ("Sterling" or "Sterling Defendants").
[3] Goldman Sachs & Co. LLC, Merrill Lynch, Pierce, Fenner & Smith Incorporated, Evercore Group L.L.C., Morgan Stanley & Co. LLC, Piper Jaffray & Co., RBC Capital Markets , LLC, Dougherty & Company LLC, Deutsche Bank Securities Inc., and BMO Capital Markets Corp. are the "Underwriter Defendants" in this case.
[4] The "Director Defendants" are Richard Covert, Daniel J. Hosler, Stephen M. Mengert, Steven V. Napolitano, Daniel W. Rosenberg, Gregory W. Scott, Ronald L. Taylor, and Jeffrey S. Vender, each of whom was a member of the Board of Directors of Adeptus Health, Inc. at the time of one or more of the offerings.

**BACKGROUND**

Adeptus Health, Inc. ("Adeptus") was in the healthcare industry, specifically in the business of freestanding emergency rooms ("FERs"). Adeptus was a fast-growing company and was moving into new markets through the use of joint ventures. On June 25, 2014, Adeptus conducted its initial public offering ("IPO") at $22 per share pursuant to the registration statement and accompanying prospectus. On May 11, 2015, Adeptus conducted a secondary public offering ("May 2015 Offering") pursuant to a May 4, 2015 registration statement and May 5, 2015 prospectus. On July 29, 2015, Adeptus conducted another secondary public offering ("July 2015 Offering") pursuant to a July 20, 2015 registration statement and July 29, 2015 prospectus. On June 8, 2016, Adeptus conducted a third secondary public offering ("June 2016 Offering") pursuant to a June 2, 2016, prospectus and July 2015 registration statement (collectively "the class period").

The Lead Plaintiffs Alameda County Employees' Retirement Association and Arkansas Techer Retirement System, and additional named plaintiff Miami Firefighters' Relief and Pension Fund ("the Named Plaintiffs") allege that during the class period, Defendants made misleading statements to investors about Adeptus. The Named Plaintiffs allege that Defendants made three general categories of misrepresentations. The Court details the general allegations regarding these categories.

**Patient Acuity**

The severity of a patient's condition is described as the patient's acuity level. Acuity levels are measured using a scale from one to five, with one being the least severe and five being the most severe. The acuity mix is important to Adeptus's profitability, as it is related to the ability to obtain reimbursements from health insurers. According to the Named Plaintiffs, Defendants

2

repeatedly represented that Adeptus had a high patient acuity mix and that low acuity level patients were informed of the prices at FERs and educated on urgent care centers. However, to the contrary, Adeptus conducted an internal analysis of its patient acuity level and determined that "over ***60%*** of Adeptus's patients could have been treated in urgent care [centers]." (Dkt. #108 at ¶ 62). Moreover, an NBC-affiliate, KUSA, ran a story on Adeptus, corroborating the internal analysis suggesting a lower acuity level than represented and also reporting that Adeptus was overbilling low-acuity patients.

**Joint Ventures**

In order to grow its business, Adeptus entered into several joint ventures. Defendants represented that Adeptus owned a 49% equity stake in the joint ventures and the partner would own 51% equity interest in the joint venture. Further, Defendants represented that Adeptus, even though a minority interest holder, would capture 65% of the profits of the joint venture along with a variety of other representations regarding the joint venture structure. However, the joint venture business model required Adeptus to fund 100% of the joint venture's working capital and absorb 100% of their operating losses. This cost sharing structure was not disclosed to investors.

**Internal Controls**

In October 2015, Adeptus retained an affiliate of McKesson Corporation to handle all coding, billing, and revenue collection to ensure compliance with all mandates by the U.S. Department of Health and Human Services. A few months later, in February 2016, Adeptus announced that it could not rely on the SOC-1 Report (the Service Organization Control Report) created by McKesson to establish the adequacy of Adeptus's internal control over coding and billing functions, but assured investors that this was simply due to the timing of McKesson's

hiring. However, investors later discovered that there were key aspects of the revenue cycle management process that were not being performed.

The above facts led to a significant loss in revenue, which is also alleged to be kept from the investors. On October 27, 2016, the first complaint for violations of federal securities laws was filed based on the above misrepresentations and omissions. The plaintiffs alleged violations of Sections 11, 12(a)(2), and 15 of the Securities Act and Sections 10(b) and 20(a) of the Exchange Act based on the misrepresentations made to investors regarding Adeptus. On April 19, 2017, Adeptus filed a voluntary petition for bankruptcy. On August 31, 2017, the Court appointed the Lead Plaintiffs in this case. On November 21, 2017, the Named Plaintiffs filed the amended Consolidated Class Action Complaint (Dkt. #108). On February 5, 2018, Defendants filed their various motions to dismiss (Dkt. #119; Dkt. #120; Dkt. #121; Dkt. #123). On April 6, 2018, the Named Plaintiffs filed their response to the Defendants' motions (Dkt. #130). Defendants filed their replies to the response on May 21, 2018 (Dkt. #133; Dkt. #134; Dkt. #135; Dkt. #137). Finally, on June 15, 2018, Plaintiffs filed their sur-reply (Dkt. #143).

## APPLICABLE LAW

### I. Rule 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) authorizes dismissal of a case for lack of subject matter jurisdiction when the district court lacks statutory and constitutional power to adjudicate the case. *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). If a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the Court will consider the jurisdictional attack under Rule 12(b)(1) before addressing any attack on the legal merits. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

In deciding the motion, the Court may consider "(1) the complaint alone; (2) the complaint supplemented by the undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the [C]ourt's resolution of disputed facts." *Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir. 2008) (quoting *Barrera-Montenegro v. United States*, 74 F.3d 657, 659 (5th Cir. 1996)). The Court will accept as true all well-pleaded allegations set forth in the complaint and construe those allegations in the light most favorable to the plaintiff. *Truman v. United States*, 26 F.3d 592, 594 (5th Cir. 1994). Once a defendant files a motion to dismiss under Rule 12(b)(1) and challenges jurisdiction, the party invoking jurisdiction has the burden to establish subject matter jurisdiction. *See Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980). The Court will grant a motion to dismiss for lack of subject matter jurisdiction only if it appears certain that the claimant cannot prove a plausible set of facts to support a claim that would entitle it to relief. *Lane*, 529 F.3d at 557.

Here, the subject matter jurisdiction challenge is based on a lack of standing. Standing "'is perhaps the most important of [the jurisdictional] doctrines.'" *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990) (citation omitted). It is a well-settled principle that standing cannot be inferred from statements made in the pleadings, but must affirmatively appear in the record. *Id.* (citations omitted). "It is the burden of the party who seeks the exercise of jurisdiction in his favor clearly to allege facts demonstrating that he is a proper party to invoke judicial resolution of the dispute." *Id.* (citations omitted).

In order to have standing under Article III, a plaintiff must first have suffered an injury in fact. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). An injury in fact is an "invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. *Id.* (internal quotations and citations omitted). Second, there must

be a causal connection between the injury and the conduct, thus the "injury has to be fairly traceable to the challenged action of the defendant, and not… the result of the independent action of some third party not before the court." *Id*. (internal quotations and citations omitted). Third, it must be likely that the injury will be redressed by a favorable decision. *Id*.

## II. Rule 12(b)(6)

The Federal Rules of Civil Procedure require that each claim in a complaint include a "short and plain statement . . . showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Each claim must include enough factual allegations "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

A Rule 12(b)(6) motion allows a party to move for dismissal of an action when the complaint fails to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). When considering a motion to dismiss under Rule 12(b)(6), the Court must accept as true all well-pleaded facts in plaintiff's complaint and view those facts in the light most favorable to the plaintiff. *Bowlby v. City of Aberdeen*, 681 F.3d 215, 219 (5th Cir. 2012). The Court may consider "the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010). The Court must then determine whether the complaint states a claim for relief that is plausible on its face. "'A claim has facial plausibility when the plaintiff pleads factual content that allows the [C]ourt to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "But where the well-pleaded facts do not permit the [C]ourt to infer more than the mere possibility of misconduct, the

complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)).

In *Iqbal*, the Supreme Court established a two-step approach for assessing the sufficiency of a complaint in the context of a Rule 12(b)(6) motion. First, the Court should identify and disregard conclusory allegations, for they are "not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 664. Second, the Court "consider[s] the factual allegations in [the complaint] to determine if they plausibly suggest an entitlement to relief." *Id.* "This standard 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary claims or elements.'" *Morgan v. Hubert*, 335 F. App'x 466, 470 (5th Cir. 2009) (citation omitted). This evaluation will "be a context-specific task that requires the reviewing [C]ourt to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570).

### III.   Rule 9(b)

Rule 9(b) states, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." FED. R. CIV. P. 9(b).

Rule 9(b)'s particularity requirement generally means that the pleader must set forth the "who, what, when, where, and how" of the fraud alleged. *United States ex rel. Williams v. Bell Helicopter Textron, Inc.*, 417 F.3d 450, 453 (5th Cir. 2005). A plaintiff pleading fraud must "specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Herrmann Holdings Ltd.*

7

*v. Lucent Techs. Inc.*, 302 F.3d 552, 564–65 (5th Cir. 2002). The goals of Rule 9(b) are to "provide[] defendants with fair notice of the plaintiffs' claims, protect[] defendants from harm to their reputation and goodwill, reduce[] the number of strike suits, and prevent[] plaintiffs from filing baseless claims." *U.S. ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 190 (5th Cir. 2009) (citing *Melder v. Morris*, 27 F.3d 1097, 1100 (5th Cir. 1994)). Courts are to read Rule 9(b)'s heightened pleading requirement in conjunction with Rule 8(a)'s insistence on simple, concise, and direct allegations. *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 178 (5th Cir. 1997). However, this requirement "does not 'reflect a subscription to fact pleading.'" *Grubbs*, 565 F.3d at 186. "Claims alleging violations of the Texas Insurance Code and the DTPA and those asserting fraud, fraudulent inducement, fraudulent concealment, and negligent misrepresentation are subject to the requirements of Rule 9(b)." *Frith v. Guardian Life Ins. Co. of Am.*, 9 F. Supp. 2d 734, 742 (S.D. Tex. 1998); *see Berry v. Indianapolis Life Ins. Co.*, No. 3:08-CV-0248-B, 2010 WL 3422873, at *14 (N.D. Tex. Aug. 26, 2010) ("'[W]hen the parties have not urged a separate focus on the negligent misrepresentation claims,' the Fifth Circuit has found negligent misrepresentation claims subject to Rule 9(b) in the same manner as fraud claims."). Failure to comply with Rule 9(b)'s requirements authorizes the Court to dismiss the pleadings as it would for failure to state a claim under Rule 12(b)(6). *United States ex rel. Williams v. McKesson Corp.*, No. 3:12-CV-0371-B, 2014 WL 3353247, at *3 (N.D. Tex. July 9, 2014) (citing *Lovelace v. Software Spectrum, Inc.*, 78 F.3d 1015, 1017 (5th Cir. 1996)).

**IV.    PSLRA**

When Congress implemented the Private Securities Litigation Reform Act of 1995 ("PSLRA") it intended that certain section of the act would "heighten the pleading requirements in securities fraud cases above the requirements of case law interpreting Rule 9(b)." *Id.* at 405.

As such, "the PSLRA requires a plaintiff to identify each allegedly misleading statement with particularity and explain why it is misleading"—the particularity requirement. *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 240 (5th Cir. 2009) (citing 15 U.S.C. § 78u–4(b)(1)). Additionally, certain sections of the PSLRA "provide[] that a plaintiff must allege facts 'giving rise to a strong inference that the defendant acted with the required state of mind'"—the scienter requirement. *Id.* (quoting 15 U.S.C. § 78u–4(b)(2)).

## ANALYSIS

The Defendants in this case filed motions to dismiss arguing the Court should dismiss the Named Plaintiffs' claims under both Rule 12(b)(6) and 12(b)(1). When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the Court should consider the 12(b)(1) jurisdictional attack before addressing any attack on the merits. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

### I.  12(b)(1) Standing

The Underwriter Defendants'[5] argue that the Named Plaintiffs do not have standing to assert their Securities Act claims based on the IPO, the May 2015 Offering, or aftermarket purchases of the July 2015 Offering and June 2016 Offering.

Standing in Securities Act cases "'is concerned with the initial distribution of securities,'" and as such, is limited to a "narrow class of persons" based on the specific section of the Securities Act. *Krim v. pcOrder.com, Inc.*, 402 F.3d 489, 495 (5th Cir. 2005) (quoting *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 861 (5th Cir. 2003)). Here, the Named Plaintiffs assert a Section 11 claim against the Underwriter Defendants, the Executive Defendants, and the Underwriter Defendants

---

[5] Although the argument is only briefed in the Underwriter Defendants' Motion, the Executive Defendants and the Director Defendants adopt and incorporate the Underwriter Defendants' standing argument by reference (Dkt. #119 at p. 4 n.2; Dkt. #123 at pp. 3–4). In this section, any reference to an argument of the Underwriter Defendants also refers to an argument by the Executive Defendants and the Director Defendants.

(Dkt. #108 at ¶¶ 412–19). The Named Plaintiffs additionally assert a Section 12(a)(2) claim against the Underwriter Defendants (Dkt. #108 at ¶¶ 420–29).

Section 11 gives "any person acquiring such security to sue" based on a "public offering of securities to a false registration statement[.]" *Krim*, 332 F.3d at 495 (quoting 15 U.S.C. § 77k(a)). Accordingly, Section 11 claims may be brought by "'those who purchase securities that are the direct subject of the prospectus and registration statement'" or those who can "'trace' their shares to the faulty registration[,]" in other words, those who are able to "trace the security for which damages are claimed to the specific registration statement at issue." *Id.* (quoting *Fischman v. Raytheon Mfg. Co.*, 188 F.2d 783, 786–87 (2d Cir. 1951); *Rosenzweig*, 332 F.3d at 873).

However, Section 12(a)(2) "imposes liability on only the buyer's immediate seller; remote purchasers are precluded from bringing actions against remote sellers. Thus, a buyer cannot recover against his seller's seller." *Pinter v. Dahl*, 486 U.S. 622, 644 n.21 (1988). "In other words, [S]ection 12(a)(2) is more narrow than [S]ection 11 in that it is limited to shareholders who acquired securities directly in the initial offering; it is not sufficient to allege that the shares can be 'traced back' to the offering." *Congregation of Ezra Sholom v. Blockbuster, Inc.*, 504 F. Supp. 2d 151, 159 (N.D. Tex. 2007).

The parties agree that the Named Plaintiffs purchased shares directly from the July 2015 Offering and June 2016 Offering and thus have standing to sue based on Section 11 and Section 12(a)(2) as to these offerings. The parties also agree that the Named Plaintiffs have not purchased shares directly in or shares that are traceable to the IPO or the May 2015 Offering. However, the Named Plaintiffs assert that they have class standing pursuant to the *NECA* decision. The Underwriter Defendants maintain that the Court should decline to adopt the class standing theory, and even if the Court did adopt class standing, the Named Plaintiffs failed to meet it in this case.

In *NECA*, the Second Circuit, after analyzing Supreme Court case law, determined that

> in a putative class action, a plaintiff has class standing if he plausibly alleges (1) that he "personally has suffered some actual . . . injury as a result of the putatively illegal conduct of the defendant," and (2) that such conduct implicates "the same set of concerns" as the conduct alleged to have cause by the same defendants.

*NECA-IBEW Heath & Welfare Fund v. Goldman Sachs & Co.*, 693 F.3d 145, 162 (2d Cir. 2012) (citations omitted) (alterations in original). However, several courts since this decision have declined to follow the class standing doctrine. *In re Plains All Am. Pipeline, L.P. Sec. Litig.*, 245 F. Supp. 3d 870, 929 (S.D. Tex. 2017) (citing *Beaver Cty. Employees' Ret. Fund v. Tile Shop Holdings, Inc.*, 94 F. Supp. 3d 1035, 1058 (D. Minn. 2015); *In re Countrywide Fin. Corp. Mortg.-Backed Sec, Litig.*, 934 F. Supp. 2d 1219, 1229 (C.D. Cal. 2013)). Indeed, this doctrine has not been adopted by the Fifth Circuit and a district court within the Fifth Circuit has rejected the doctrine in its entirety. *Id.* at 932. *But see In re Cobalt Int'l Energy, Inc. Sec. Litig.*, No. H–14–3428, 2016 WL 949065, at *5 (S.D. Tex. March 14, 2016) (holding the lead plaintiff had proper standing because the lead plaintiff was a purchaser of an offering that had the exact same registration statement as another offering and, therefore, had a sufficient interest to advance the interest of purchasers of both offerings). The Court agrees with the Southern District of Texas's reasoning in *In re Plains* and finds that the class standing doctrine does not comport with the traditional rules of standing and that the Supreme Court never intended to create such a doctrine. *In re Plains*, 245 F. Supp. 3d at 930–32. Thus, "[i]f the plaintiff has individual standing to assert a claim, she may do so on behalf of a class of persons similarly situated. If she does not have individual standing to assert a claim, she may not do so even if she meets the other Rule 23(a) requirements." *Id.* at 932.

Because the parties agree to the facts of this case, the Court's analysis is simple. The Named Plaintiffs did not purchase shares directly in the IPO or the May 2015 Offering and,

11

therefore, lack standing under Section 12(a)(2) to sue regarding the IPO and the May 2015 Offering. *Pinter*, 486 U.S. at 644 n.21; *Congregation of Ezra Sholom*, 504 F. Supp. 2d at 159. Further, the Named Plaintiffs did not purchase any shares that are traceable to the IPO or the May 2015 Offering. Accordingly, the Named Plaintiffs lack standing to sue under Section 11 in the IPO and the May 2015 Offering. *Krim*, 332 F.3d at 495.

However, the Court disagrees with the Underwriter Defendants that the Court should dismiss any aftermarket shares for the July 2015 Offering or the June 2016 Offering. All relevant parties admit that the Named Plaintiffs purchased shares from the July 2015 Offering and the June 2016 Offering and have standing to assert claims as to these offerings. Defendants have not pointed the Court to any case law to suggest that, at the pleadings stage, the Court should analyze standing in a piecemeal fashion and limit the scope the class. Accordingly, because the Named Plaintiffs have demonstrated that they have standing in the July 2015 Offering and June 2016 Offering, the claims relating to these offerings will not be dismissed at this juncture.

Even if the Court did apply *NECA* and the class standing doctrine, the Named Plaintiffs would still not have proper standing over the IPO or the May 2015 Offering. As a preliminary matter, the IPO and May 2015 Offering claims are not asserted against the same defendants as the defendants subject to the July 2015 Offering and June 2016 Offering, as different people signed each, although the Court acknowledges that there is overlap between the defendants. *NECA*, 693 F.3d at 162; *In re Plains*, 245 F. Supp. 3d at 932. Further, the registration statement and prospectus are not identical between the different offerings. *See NECA*, 693 F.3d at 157; *In re Plains*, 245 F. Supp. 3d at 932; *In re Cobalt Int'l Energy*, 2016 WL 949065, at *5. *But see New Jersey Carpenters Health Fund v. Residential Capital*, Nos. 08 CV 8781 (HB), 08 CV 5093 (HB), 2013 WL 6669966, at *3 (S.D.N.Y. Dec. 12, 2013) (holding that a different shelf registration did not negate a finding

of class standing). Further, there is not a sufficient showing that there are the same set of concerns between the different offerings, as proof that statements were false during one offering does not prove that they were false in another offering. *In re Plains*, 245 F. Supp. 3d at 932.

## II. 12(b)(6)

The Named Plaintiffs assert a Section 10(b) claim against the Executive Defendants, Section 20(a) claims against the Executive Defendants and the Sterling Defendants, Section 11 claims against the Executive Defendants, the Director Defendants, and the Underwriter Defendants, Section 12(a)(2) claims against the Underwriter Defendants, and Section 15 claims against the Executive Defendants and the Sterling Defendants. Defendants move to dismiss these claims for a variety of reasons, including but not limited to: (1) failure to adequately plead any statements were false; (2) failure to adequately plead facts to show scienter; (3) failure to properly plead control; and (4) Plaintiffs' claims are time-barred based on the statute of repose and the statute of limitations.[6]

After reviewing the current complaint, the motions to dismiss, the response, the replies, and the sur-reply using the guiding principles for the PSLRA, the Court finds that the Plaintiffs have stated plausible claims for purposes of defeating a Rule 12(b)(6) motion to dismiss.

## CONCLUSION

It is therefore **ORDERED** that the Executive Defendants' Motion to Dismiss (Dkt. #119) is hereby **GRANTED in part and DENIED in part**, the Underwriter Defendants' Motion to Dismiss the Consolidated Class Action Complaint (Dkt. #121) is hereby **GRANTED in part and DENIED in part**, the Director Defendants' Motion to Dismiss the Consolidated Class Action Complaint (Dkt. #123) is hereby **GRANTED in part and DENIED in part**. The motions are

---

[6] This is a general statement regarding all of the different defendants' arguments and the Court acknowledges that they are not all encompassing.

granted as to the Named Plaintiffs' Section 11 and 12(a)(2) claims in the IPO and May 2015 Offering. Otherwise, the motions are denied. Further, it is so **ORDERED** that Sterling's Motion to Dismiss the Class Action Complaint (Dkt. #120) is hereby **DENIED** and Defendants' Motion for Oral Argument on Motions to Dismiss (Dkt. #147) is hereby **DENIED as moot**. The Named Plaintiffs shall have fourteen days from entry of this Order to submit an amended complaint in compliance with this Order.

**SIGNED this 12th day of September, 2018.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE