# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

OKLAHOMA LAW ENFORCEMENT
RETIREMENT SYSTEM, Individually And
On Behalf Of All Others Similarly Situated,

     Plaintiff,

 vs.

ADEPTUS HEALTH INC., *et al.*,

     Defendants.

Case No. 4:17-CV-0449-ALM

Judge Amos L. Mazzant, III

## PLAINTIFFS' UNOPPOSED MOTION FOR AN ORDER PRELIMINARILY APPROVING PROPOSED CLASS ACTION SETTLEMENT AND AUTHORIZING DISSEMINATION OF NOTICE TO THE SETTLEMENT CLASS AND <u>MEMORANDUM OF LAW IN SUPPORT THEREOF</u>

# TABLE OF CONTENTS

Page

I. PRELIMINARY STATEMENT ...................................................................................1

II. HISTORY OF THE ACTION ...................................................................................5

III. THE PROPOSED SETTLEMENT .............................................................................8

IV. THE PROPOSED SETTLEMENT MERITS PRELIMINARY APPROVAL...................9

    A. Standards Governing Approval of Class Action Settlements.................................9

    B. The Court "Will Likely Be Able to" Approve the Proposed Settlement Under Rule 23(e)(2)....................................................................................................11

        1. "Procedural" Aspects of the Settlement Satisfy Rule 23(e)(2)................11

        2. The Settlement's Terms Are Adequate and Equitable ............................14

            a. The Settlement Provides Substantial Relief, Especially in Light of the Costs, Risks, and Delay of Further Litigation ...................14

            b. The Proposed Settlement Does Not Unjustly Favor Any Settlement Class Member.............................................................18

            c. The Anticipated Request for Attorneys' Fees is Reasonable ........19

            d. Plaintiffs Have Identified All Agreements Made in Connection with the Settlement ...................................................................20

V. THE PROPOSED SETTLEMENT CLASS SHOULD BE CERTIFIED ........................21

    A. The Settlement Class Satisfies Rule 23(a)'s Requirements .................................22

    B. The Settlement Class Satisfies Rule 23(b)(3)'s Requirements.............................25

VI. THE PROPOSED FORMS AND METHOD OF NOTICE TO THE SETTLEMENT CLASS SHOULD BE APPROVED ...........................................................................27

VII. PROPOSED SCHEDULE OF SETTLEMENT-RELATED EVENTS ...........................29

VIII. CONCLUSION ...................................................................................................30

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amchem Prods., Inc. v. Windsor,*
521 U.S. 591 (1997) ........................................................................ 21, 22, 25

*Amgen Inc. v. Conn Ret. Plans & Trust Funds,*
568 U.S. 455 (2013) ................................................................................. 26

*In re Bear Stearns Cos., Inc. Sec. Deriv. and ERISA Litig.,*
909 F. Supp. 2d 259 (S.D.N.Y. 2012) ....................................................... 17

*Billitteri v. Sec. Am., Inc.,*
2011 WL 3586217 (N.D. Tex. Aug. 4, 2011) ............................................ 13

*City of Pontiac Gen. Emps.' Ret. Sys. v. Dell Inc.,*
2018 WL 1558571 (W.D. Tex. Mar. 29, 2018) ......................................... 24

*In re China Sunergy Sec. Litig.,*
2011 WL 1899715 (S.D.N.Y. May 13, 2011) ........................................... 15

*In re Cobalt Int'l Energy, Inc. Sec. Litig.,*
2017 WL 2608243 (S.D. Tex. June 15, 2017) ...................................... 23, 24, 26

*Cotton v. Hinton,*
339 F.2d 1326 (5th Cir. 1977) .............................................................. 9, 13

*DeHoyos v. Allstate Corp.,*
240 F.R.D. 269 (W.D. Tex. 2007) ............................................................ 13

*Del Carmen v. R.A. Rogers, Inc.,*
2018 WL 4701824 (W.D. Tex. Apr. 25, 2018) *adopted by* 2018 WL 4688774
(W.D. Tex. June 13, 2018) ....................................................................... 10

*In re Dell Inc., Sec. Litig.,*
2010 WL 2371834 (W.D. Tex. June 11, 2010), *aff'd sub nom. Union Asset*
*Mgmt. Holding A.G. v. Dell, Inc.,* 669 F.3d 632 (5th Cir. 2012) .................... 18, 19

*In re Elec. Data Sys. Corp. Sec. Litig.,*
226 F.R.D. 559 (E.D. Tex. 2005) *aff'd, Feder v. Elec. Data Sys. Corp.,* 429
F.3d 125 (5th Cir. 2005) ...................................................................... 25, 26

*Erica P. John Fund, Inc. Haliburton Co.,*
563 U.S. 804 (2011) ................................................................................. 26

*In re Fed. Nat'l Mortg. Ass'n Sec., Derivative, & "ERISA" Litig.*,
  4 F. Supp. 3d 94 (D.D.C. 2013) ...................................................................15

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
  55 F.3d 768 (3d Cir. 1995) .........................................................................9

*In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*,
  851 F. Supp. 2d 1040 (S.D. Tex. 2012)................................... 11, 12, 14

*Hefler v. Wells Fargo & Co.*,
  2018 WL 4207245 (N.D. Cal. Sept. 4, 2018) ....................................20

*In re IMAX Sec. Litig.*,
  283 F.R.D. 178 (S.D.N.Y. 2012) ...........................................................21

*KB Partners I. L.P. v. Barbier*,
  2013 WL 2443217 (W.D. Tex. June 4, 2013) ....................................23

*Klein v. O'Neal, Inc.*,
  705 F. Supp. 2d 632 (N.D. Tex. 2010) ................................................18

*In re Lease Oil Antitrust Litigation (No. II)*,
  186 F.R.D. 403 (S.D. Tex. May 10, 1999) .........................................12

*Lehocky v. Tidel Techs., Inc.*,
  220 F.R.D. 491 (S.D. Tex. 2004) ..........................................................13

*Levitin v. A Pea In The Pod, Inc.*,
  1997 WL 160184 (N.D. Tex. Mar. 31, 1997) ....................................23

*In re Mannkind Corp. Sec. Litig.*,
  2012 WL 13008151 (C.D. Cal. Dec. 21, 2012) .................................13

*Marcus v. J.C. Penney Co., Inc.*,
  2016 WL 8604331 (E.D. Tex. Aug. 29, 2016), *adopted by* 2017 WL 907996
  (E.D. Tex. Mar. 8, 2017) ...............................................................23, 24

*Marcus v. J.C. Penney Co., Inc.*,
  2017 WL 6590976 (E.D. Tex. Dec. 18, 2017), *adopted by* 2018 WL 307024
  (E.D. Tex. Jan. 4, 2018)...........................................................................20

*McNamara v. Bre-X Minerals Ltd.*,
  214 F.R.D. 424 (E.D. Tex. 2002).........................................................10

*Mullane v. Cent. Hanover Bank & Tr. Co.*,
  339 U.S. 306 (1950) ..................................................................................27

*Mullen v. Treasure Chest Casino, LLC*,
    186 F.3d 620 (5th Cir. 1999) ............................................................. 23

*N.Y. State Teachers' Ret. Sys. v. Gen. Motors Co.*,
    315 F.R.D. 226 (E.D. Mich. 2016), *aff'd sub nom. Marro v. N.Y. State*
    *Teachers' Ret. Sys.*, 2017 WL 6398014 (6th Cir. Nov. 27, 2017) ....................... 21

*Netsky v. Capstead Mortg. Corp.*,
    2000 WL 964935 (N.D. Tex. July 12, 2000) ........................................ 25

*In re OCA, Inc. Sec. & Derivative Litig.*,
    2008 WL 4681369 (E.D. La. Oct. 17, 2008) ........................... 10, 19, 29

*Reed v. Gen. Motors Corp.*,
    703 F.2d 170 (5th Cir. 1983) ............................................................. 11

*Schwartz v. TXU Corp.*,
    2005 WL 3148350 (N.D. Tex. Nov. 8, 2005) ........................... 20, 28, 29

*Slipchenko v. Brunel Energy, Inc.*,
    2015 WL 338358 (S.D. Tex. Jan. 23, 2015) ........................................ 14

*In re Telik, Inc. Sec. Litig.*,
    576 F. Supp. 2d 570 (S.D.N.Y. 2008) ............................................... 19

**Statutes**

15 U.S.C. § 78u-4(a)(4) ......................................................................... 19

15 U.S.C. § 78u-4(a)(7) ......................................................................... 29

28 U.S.C. § 1715 (2005) *et seq.* ........................................................... 28

**Other Authorities**

Fed. R. Civ. P. 23 ........................................................................ *passim*

Stefan Boettrich & Svetlana Starykh, *Recent Trends in Securities Class Action*
    *Litigation: 2018 Full-Year Review,* NERA Economic Consulting, Jan. 29, 2019 ............... 15

Court-appointed Lead Plaintiffs, Alameda County Employees' Retirement Association ("ACERA") and Arkansas Teacher Retirement System ("ATRS" and, together with ACERA, "Lead Plaintiffs"), and additional named plaintiff Miami Fire Fighters' Relief and Pension Fund ("Miami" and, together with Lead Plaintiffs, "Plaintiffs"), respectfully submit this unopposed motion, pursuant to Federal Rule of Civil Procedure ("Rule") 23, for entry of the Parties' agreed-upon [Proposed] Order Preliminarily Approving Settlement and Providing for Notice ("Preliminary Approval Order"), which is filed herewith.[1]

## I. PRELIMINARY STATEMENT

Following three years of hard-fought litigation, Plaintiffs have reached an agreement to resolve the Action in exchange for a total of $44,000,000 in cash pursuant to the terms of the Stipulation (the "Settlement"). If approved, the Settlement will resolve this Action in its entirety. Plaintiffs now seek the Court's preliminary approval of the Settlement under Rule 23(e)(1) so that notice of the Settlement can be disseminated to the Settlement Class and the Settlement Hearing can be scheduled.

The Settlement represents an excellent result for the Settlement Class in light of the risks and challenges of the Action, including the fact that Adeptus Health Inc. ("Adeptus") filed for bankruptcy. In agreeing with Defendants[2] to resolve the Action, Plaintiffs and Lead Counsel made

---

[1]     All capitalized terms not defined herein shall have the meanings ascribed to them in the Stipulation and Agreement of Settlement dated November 26, 2019 ("Stipulation"). The Stipulation is attached as Exhibit A to the accompanying Declaration of Richard A. Russo, Jr. ("Russo Decl."). All exhibits referenced herein are attached to the Russo Declaration.

[2]     Defendants refer collectively to Thomas S. Hall, Timothy L. Fielding, and Graham B. Cherrington (collectively, the "Executive Defendants"); entities operating under the trade name Sterling Partners, SC Partners III, L.P., SCP III AIV THREE-FCER Conduit, L.P., SCP III AIV THREE-FCER L.P., Sterling Capital Partners III, LLC, Sterling Capital Partners III, L.P., Sterling Fund Management LLC, Sterling Fund Management Holdings, L.P., and Sterling Fund Management Holdings GP, LLC (collectively, the "Sterling Defendants"); Richard Covert, Daniel Rosenberg, Daniel J. Hosler, Steven Napolitano, Ronald L. Taylor, Gregory W. Scott, Jeffrey S.

a fully informed evaluation of the risks of continued litigation and the fairness of resolution at this time. Plaintiffs respectfully submit that the Settlement appropriately balances Plaintiffs' objective of securing the highest possible monetary recovery for the Settlement Class against the significant risk that they could receive a smaller recovery—*or no recovery at all*—if Defendants were to prevail at summary judgment or trial. Further, two key motions were still pending at the time of settlement—Plaintiffs' motion for class certification and Defendants' motions to dismiss the Second Amended Consolidated Class Action Complaint ("SAC" or "Complaint")—and adverse rulings on either of those motions could have resulted in a significantly smaller recovery or no recovery. Of course, Plaintiffs also faced risk that Defendants could succeed on one or more of their defenses to loss causation and damages. If so, even if Plaintiffs succeeded in certifying a class and establishing Defendants' liability, the recovery could nevertheless be *zero*.

The Settlement is particularly beneficial to Settlement Class Members given that, as noted, Adeptus—the issuer of the securities that form the basis for this Action—filed for bankruptcy in April 2017, less than six months after the case began. This stayed the Action against Adeptus and effectively prevented Adeptus from being a potential source of recovery for the Settlement Class in this Action. Plaintiffs and Lead Counsel took steps to maximize the potential recovery for the Settlement Class under these circumstances by vigorously pursuing available claims against other entities, such as the Sterling Defendants and the Underwriter Defendants, and seeking to maximize

---

Vender, and Stephen M. Mengert (collectively, the "Director Defendants"); Goldman Sachs & Co. LLC, Merrill Lynch, Pierce, Fenner & Smith Incorporated (n/k/a BofA Securities, Inc.), BMO Capital Markets Corp., Evercore Group L.L.C., Piper Jaffray & Co., Dougherty & Company LLC, Deutsche Bank Securities Inc., Morgan Stanley & Co. LLC, and RBC Capital Markets, LLC (collectively, the "Underwriter Defendants"); and Frank R. Williams, Jr. ("Williams"). Williams, Daniel J. Hosler, Deutsche Bank Securities Inc., Morgan Stanley & Co. LLC, and RBC Capital Markets, LLC are no longer defendants in the Action and are considered Defendants solely for purposes of the Settlement.

recovery against the Executive Defendants and the Director Defendants. But there can be no doubt that Adeptus's insolvency made achieving a recovery in this Action more challenging. Particularly in light of these circumstances, Plaintiffs and Lead Counsel believe that the $44,000,000 Settlement is an excellent result for the Settlement Class.

In addition, the Settlement is the result of extensive arm's-length negotiations conducted with the assistance of one of the most experienced and respected mediators of complex litigations in the country, former United States District Judge Layn R. Phillips ("Judge Phillips"). The Parties' settlement discussions included a formal mediation session with Judge Phillips, accompanied by extensive written submissions, and months of hard-fought negotiations supervised and facilitated by Judge Phillips. The Settlement was reached only after Judge Phillips made a mediator's proposal that the Parties settle the Action within a given range—which each side accepted. Then, after a few more weeks of negotiations, the Parties subsequently reached an agreement to settle the Action in its entirety for $44,000,000.

Plaintiffs and Lead Counsel devoted enormous time, effort, and resources to litigating this Action. Indeed, by the time the Settlement was reached, Plaintiffs and Lead Counsel had conducted an extensive investigation, including interviews with former employees of Adeptus, and filed two detailed complaints, including the operative SAC. They navigated Adeptus's bankruptcy filing and its implications for the Action with the assistance of bankruptcy counsel. They also largely defeated Defendants' first round of motions to dismiss. Then, Plaintiffs and Lead Counsel engaged in extensive and far-reaching discovery, which involved obtaining and reviewing more than 2.7 million pages of documents produced by Defendants as well as Adeptus and other non-parties. Indeed, Lead Counsel took or participated in the depositions of 28 fact witnesses, including each of the Executive Defendants. Plaintiffs and Lead Counsel fully briefed Plaintiffs' motion for class

certification ("Motion to Certify"), which included the exchange of expert reports on class certification and the depositions of the Parties' experts. They also fully briefed Defendants' motions to dismiss certain allegations in the SAC ("Second Motions to Dismiss"). In addition, by the time the Parties reached the Settlement, Plaintiffs and Lead Counsel had spent months working with multiple experts regarding the merits of Plaintiffs' securities claims and, indeed, were close to finalizing and serving several of their opening expert reports on the merits. Lead Counsel were also preparing for summary judgment motions. Finally, as previously noted, Plaintiffs and Lead Counsel engaged in months of hard-fought, arm's-length settlement discussions facilitated by Judge Phillips, including a formal mediation involving extensive written submissions. Accordingly, Plaintiffs and Lead Counsel had a detailed and well-developed understanding of the strengths, weaknesses, and risks of the Action, which informed their determination that the Settlement is fair, reasonable, and adequate.

In this motion, Plaintiffs request only that the Court grant preliminary approval of the Settlement so that notice may be provided to the Settlement Class. Specifically, Plaintiffs request that this Court enter the proposed Preliminary Approval Order which will, among other things: (i) grant preliminary approval of the Settlement; (ii) approve the form and manner of providing notice of the Settlement to the Settlement Class, including the form and content of the Notice, Claim Form, and Summary Notice; and (iii) schedule the final Settlement Hearing and related events. At the final Settlement Hearing, following additional briefing and addressing any potential objections to the Settlement, Plaintiffs and Lead Counsel will ask the Court to make a determination as to whether, in accordance with Rule 23(e)(2), the Settlement is fair, reasonable, and adequate.

For the reasons set forth herein, Plaintiffs respectfully submit that the Settlement warrants preliminary approval and respectfully request that the Court enter the Preliminary Approval Order.

## II.     HISTORY OF THE ACTION

This Action commenced on October 27, 2016 with the filing of a putative securities class action styled *Oklahoma Law Enforcement Retirement System v. Adeptus Health, Inc. et al.*, Case No. 6:16-cv-01243-RWS, on behalf of certain purchasers of Adeptus Class A common stock. ECF No. 1. Three other putative class actions related to Adeptus followed and, on June 23, 2017, the Court (the Honorable Robert W. Schroeder, III) consolidated these cases and ordered their transfer from the Tyler Division of the Court to the Sherman Division. ECF No. 69. In the midst of these filings, in April 2017, Adeptus filed for bankruptcy in the United States Bankruptcy Court for the Northern District of Texas. ECF No. 47.

Following briefing, and pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"), this Court appointed ACERA and ATRS as Lead Plaintiffs and approved their selection of Bernstein Litowitz Berger & Grossmann LLP and Kessler Topaz Meltzer & Check, LLP as Lead Counsel on August 31, 2017. ECF No. 92. On November 21, 2017, Lead Plaintiffs and additional named plaintiff Miami filed a consolidated complaint, asserting that Defendants were liable under the federal securities laws for making materially false and misleading statements about Adeptus's joint ventures, the nature and sustainability of Adeptus's prices, patient acuity levels, and internal controls, including in the offering documents for Adeptus's June 25, 2014 initial public offering ("IPO") as well as its secondary offerings in May 2015, July 2015, and June 2016. ECF No. 108.[3] Plaintiffs further alleged that the price of Adeptus Class A common stock

---

[3]     Specifically, the consolidated complaint alleged: (i) claims under Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") and U.S. Securities and Exchange Commission ("SEC") Rule 10b-5 promulgated thereunder against the Executive Defendants; (ii) claims under

was artificially inflated during the Class Period as a result of Defendants' allegedly false and misleading statements, and the price declined when a series of alleged corrective disclosures beginning in November 2015 began to reveal the truth.

On February 5, 2018, the Executive Defendants, the Sterling Defendants, the Director Defendants, and the Underwriter Defendants moved to dismiss the consolidated complaint. ECF Nos. 119-121, 123. On September 12, 2018, after full briefing of the motions (including sur-replies), the Court issued a Memorandum Opinion and Order denying in part and granting in part the motions to dismiss the consolidated complaint. ECF No. 148. Specifically, the Court dismissed Plaintiffs' Securities Act claims arising out of the IPO and the May 2015 secondary offering, but it sustained Plaintiffs' Securities Act claims arising out of the July 2015 and June 2016 offerings and all of Plaintiffs' Exchange Act claims.

On September 25, 2018, Plaintiffs filed an amended consolidated complaint (the "FAC"), which conformed Plaintiffs' allegations to the Court's Memorandum Opinion and Order. ECF No. 149.[4] On November 15, 2018, the defendants named in the FAC filed and served their Answers to the FAC. ECF Nos. 169-172.

The Parties commenced fact discovery in September 2018. Plaintiffs spent considerable time and effort pressing Defendants and Adeptus to produce all relevant documents and served

---

Section 20(a) of the Exchange Act against the Executive Defendants and certain of the Sterling Defendants; (iii) claims under Section 11 of the Securities Act of 1933 ("Securities Act") against the Executive Defendants, the Director Defendants, and the Underwriter Defendants; (iv) claims under Section 12(a)(2) of the Securities Act against the Underwriter Defendants; and (v) claims under Section 15 of the Securities Act against the Executive Defendants and certain of the Sterling Defendants.

[4]     Claims against Daniel J. Hosler were not included in the FAC or SAC because he was not a director of Adeptus at the time of the two offerings still at issue. Similarly, claims against Underwriter Defendants Deutsche Bank Securities Inc., Morgan Stanley & Co. LLC, and RBC Capital Markets, LLC were not included in the FAC or SAC because they were not underwriters for the July 2015 or June 2016 offerings.

document subpoenas on various non-parties. Plaintiffs also won a contested discovery motion for additional document custodians from the Underwriter Defendants. As a result of these efforts, Defendants, Adeptus, and non-parties produced more than 2.7 million pages of documents. In addition, Plaintiffs produced over 27,000 pages of documents to Defendants. Between May 2019 and September 2019, Plaintiffs deposed 28 fact witnesses, including (among others) the Executive Defendants, other senior executives and employees of Adeptus, employees of various Underwriter Defendants, certain of the Director Defendants, and non-parties. The Parties also served and responded to lengthy interrogatories and requests for admission, and exchanged numerous letters concerning discovery issues.

On December 7, 2018, Plaintiffs filed their Motion to Certify, including a report from their expert on market efficiency and common damages methodologies. ECF Nos. 180, 182. Defendants opposed Plaintiffs' motion along with accompanying rebuttal expert reports on February 8, 2019. ECF Nos. 205-06, 213-19. Plaintiffs filed a reply on March 22, 2019, and Defendants filed sur-replies on May 3, 2019. ECF Nos. 237-38, 240 and 254-60, 262, 264. In connection with the Motion to Certify, Defendants deposed representatives of Plaintiffs and their investment advisors, as well as Plaintiffs' market-efficiency expert, Michael L. Hartzmark, Ph.D. Plaintiffs also deposed Defendants' experts, Kenneth M. Lehn and Jack R. Wiener.

On January 31, 2019, Plaintiffs moved for leave to file a second amended complaint (ECF Nos. 200-03), which the Court granted on February 16, 2019. ECF No. 223. The SAC expanded the number of entities related to the Sterling Defendants against whom claims under Section 20(a) of the Exchange Act and Section 15 of the Securities Act were asserted. The SAC also alleged insider trading claims under Section 20A of the Exchange Act against the Executive Defendants and the Sterling Defendants. On March 4 and 5, 2019, certain Defendants filed Motions to Dismiss

seeking to dismiss certain of the claims newly asserted in the SAC. ECF Nos. 224-31. On April 9, 2019, Plaintiffs filed an omnibus brief opposing Defendants' Motions to Dismiss the SAC. ECF Nos. 227-31 and 242, 244. On April 24, 2019, Defendants filed their replies (ECF Nos. 246-51) and on May 8, 2019, Plaintiffs filed their omnibus sur-reply. ECF No. 262.

## III. THE PROPOSED SETTLEMENT

The Scheduling Order entered by the Court on January 4, 2019 (ECF No. 192) included a deadline of April 30, 2019 for the Parties to conduct an initial mediation. On April 26, 2019, the Parties participated in an in-person mediation session with Judge Phillips and his staff. In advance of that session, the Parties exchanged detailed written submissions regarding the strengths and weaknesses of Plaintiffs' claims. The Parties were unable to resolve the Action at the in-person mediation. However, over the next several months, with the assistance of Judge Phillips, Plaintiffs continued vigorous settlement negotiations with Defendants while simultaneously continuing discovery. On October 14, 2019, the Parties reached an agreement in principle to settle the Action, which was memorialized in a Term Sheet executed that same day. Thereafter, the Parties worked diligently to negotiate the full settlement terms set forth in the Stipulation and its exhibits.

In accordance with the Stipulation, Defendants shall pay or cause to be paid the Settlement Amount of $44,000,000 into the Escrow Account following preliminary approval of the Settlement. *See* Stipulation ¶ 8. The Settlement Amount, plus accrued interest, after deduction of any attorneys' fees and Litigation Expenses awarded by the Court, Taxes, and Notice and Administration Costs (the "Net Settlement Fund"), will be distributed among eligible Settlement Class Members in accordance with a plan of allocation to be approved by the Court (discussed below in more detail).

If the Settlement receives the Court's final approval, Settlement Class Members will release the "Released Plaintiffs' Claims." *See* Stipulation ¶ 1(rr). The scope of the negotiated release is reasonable, as it is limited to claims related to the purchase, acquisition, holding, sale, or disposition of Adeptus Class A common stock during the Class Period *and* to the allegations, acts, facts, transactions, statements, events, matters, occurrences, representations, or omissions involved, set forth, or referred to in any complaint filed in the Action or in any other related action that has been filed by a member of the Settlement Class. *Id.*[5] Plaintiffs and Lead Counsel respectfully submit that the Settlement warrants preliminarily approval so that Settlement Class Members can receive notice and the Court can schedule the final Settlement Hearing.

## IV.     THE PROPOSED SETTLEMENT MERITS PRELIMINARY APPROVAL

### A.     <u>Standards Governing Approval of Class Action Settlements</u>

Courts have long recognized a strong policy and presumption in favor of class action settlements. *See, e.g.*, *Cotton v. Hinton*, 339 F.2d 1326, 1331 (5th Cir. 1977) (noting "overriding public interest in favor of settlement," "[p]articularly in class action suits"). Moreover, "[t]he law favors settlement, particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation." *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 784 (3d Cir. 1995).

Rule 23(e) requires judicial approval of a compromise of claims brought on a classwide basis. *See* Fed. R. Civ. P. 23(e). Judicial approval of a class action settlement is a two-step

---

[5]     As the Court is aware, certain Adeptus stockholders who would otherwise be included in the Settlement Class have been pursuing their own separate litigation under state law based on similar conduct at issue in this Action. It is unclear whether these stockholders will continue to pursue their individual actions or participate in the Settlement. The negotiated release language thus contemplates that such former stockholders cannot simultaneously participate in the Settlement while maintaining their separate, related state law action.

process—*first*, the Court performs a preliminary review of the terms of the proposed settlement to determine whether to send notice of the proposed settlement to the class, *see* Fed. R. Civ. P. 23(e)(1); and, *second*, after notice has been provided and a hearing has been held, the Court determines whether to grant final approval of the settlement, *see* Fed. R. Civ. P. 23(e)(2). *See Del Carmen v. R.A. Rogers, Inc.*, 2018 WL 4701824, at *5 (W.D. Tex. Apr. 25, 2018), *adopted by* 2018 WL 4688774 (W.D. Tex. June 13, 2018) ("Trial court review of a class action settlement proposal is a two-step process: preliminary approval and a subsequent final approval after a fairness hearing.").

A court should grant preliminary approval to authorize notice of a settlement to the class upon a finding that it "will likely be able" to (i) finally approve the settlement under Rule 23(e)(2) and (ii) certify the class for purposes of the settlement. *See* Fed. R. Civ. P. 23(e)(1)(B). At the preliminary approval stage, a court's review is less stringent than at the final approval stage. *See In re OCA, Inc. Sec. & Derivative Litig.*, 2008 WL 4681369, at *11 (E.D. La. Oct. 17, 2008). Courts will ordinarily grant preliminary approval of a settlement where, as here, "the proposed settlement discloses no reason to doubt its fairness, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, does not grant excessive compensation to attorneys, and appears to fall within the range of possible approval, the court should grant preliminary approval." *Id.*; *see also McNamara v. Bre-X Minerals Ltd.*, 214 F.R.D. 424, 430 (E.D. Tex. 2002) ("[i]f the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness or other . . . deficiencies . . . and appears to fall within the [range] of possible approval, the court should direct that notice under Rule 23(e) be given to the class members of a formal fairness hearing . . .") (citation omitted).

In considering *final* approval of the Settlement, Federal Rule 23(e)(2) provides that the

Court consider whether:

> (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorneys' fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).[6] Each of these factors is satisfied here and, thus, preliminary approval is

appropriate.

> **B.** **The Court "Will Likely Be Able to" Approve the Proposed Settlement Under Rule 23(e)(2)**

> **1.** **"Procedural" Aspects of the Settlement Satisfy Rule 23(e)(2)**

Rule 23(e)(2)'s first two factors "look[] to the conduct of the litigation and of the

negotiations leading up to the proposed settlement." Fed. R. Civ. P. 23(e)(2) advisory committee

note to 2018 amendment. Courts may consider "the nature and amount of discovery in this or other

cases, or the actual outcomes of other cases, [which] may indicate whether counsel negotiating on

behalf of the class had an adequate information base." *Id.*; *see also In re Heartland Payment Sys.,*

*Inc. Customer Data Sec. Breach Litig.*, 851 F. Supp. 2d 1040, 1063 (S.D. Tex. 2012)

---

[6]     In determining whether to grant final approval of the Settlement, the Court will also be asked to consider the Fifth Circuit's long-standing approval factors, many of which overlap with the Rule 23(e)(2) factors: "(1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of plaintiffs' success on the merits; (5) the range of possible recovery; and (6) the opinions of class counsel, class representatives, and absent class members." *Reed v. Gen. Motors Corp.*, 703 F.2d 170, 172 (5th Cir. 1983); *see also* Fed. R. Civ. P. 23(e)(2) advisory committee note to 2018 amendment (noting that the Rule 23(e)(2) factors are not intended to "displace" any factor previously adopted by the Courts of Appeals, but "rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal").

("presumption of fairness, adequacy, and reasonableness may attach to a class action settlement reached in arm's length negotiations between experienced, capable counsel after meaningful discovery") (citation omitted).

This Settlement embodies all the hallmarks of a procedurally fair resolution under Rule 23(e)(2). *First*, as detailed above, the Parties have been litigating this Action since October 2016. Lead Counsel's settlement posture was informed by, among other things, the significant work performed in investigating and drafting two substantive amended complaints, responding to two rounds of motions to dismiss, and substantial discovery, including, voluminous written interrogatories and requests for admission, the analysis of over 2.7 million pages of productions and active participation in 38 depositions, including of the Executive Defendants. Lead Counsel also prepared and reviewed extensive written mediation submissions, engaged in full briefing on class certification, and participated in extensive consultation with multiple class certification and merits-related experts. Fully aware of the strengths and weaknesses of the claims and defenses in this Action, Lead Counsel—who have extensive experience litigating securities class actions—conducted the settlement negotiations seeking to achieve the best possible result for the Settlement Class, while at the same time accounting for the risks of continued litigation. *See, e.g.*, *Heartland*, 851 F. Supp. 2d at 1065 (finding support for settlement where "[t]he parties have shown that they possessed sufficient information to gauge the strengths and weaknesses of the claims and defenses"); *In re Lease Oil Antitrust Litigation (No. II)*, 186 F.R.D. 403, 432 (S.D. Tex. May 10, 1999) ("Considering the detailed analysis of the experts, the apparent knowledgeability of class counsel, and the sheer mass of documents available to litigants, there is every indication that class

counsel has had a sufficient understanding of the claims involved in this [case] in order to negotiate an appropriate settlement.").[7]

Additionally, Plaintiffs—sophisticated institutional investors who suffered substantial losses as a result of their purchases of Adeptus Class A common stock during the Class Period—have claims that are typical of and coexistent with those of other Settlement Class Members. Moreover, like the rest of the Settlement Class, Plaintiffs have an interest in obtaining the largest possible recovery from Defendants. *See Lehocky v. Tidel Techs., Inc.*, 220 F.R.D. 491, 502-03 (S.D. Tex. 2004) ("all class members are united in asserting a common right, such as achieving the maximum possible recovery for the class").

*Second*, the Parties' settlement negotiations were at arm's-length and facilitated by one of the most experienced securities class action mediators in the United States, Judge Phillips. The Parties' negotiations included a formal, in-person mediation session before Judge Phillips on April 26, 2019. While the April 2019 mediation ended without a settlement, the Parties, with Judge Phillips's assistance, continued their negotiations for several months. These negotiations culminated in the Parties' agreement in principle to resolve the Action for $44,000,000. *See, e.g.*, *Billitteri v. Sec. Am., Inc.*, 2011 WL 3586217, at *10 (N.D. Tex. Aug. 4, 2011) (finding no collusion in settlement reached through counsel's diligent arm's-length negotiations before a neutral mediator); *In re Mannkind Corp. Sec. Litig.*, 2012 WL 13008151, at *5 (C.D. Cal. Dec. 21, 2012) ("The Court is completely confident that the negotiations and mediation [conducted by

---

[7]     *See also DeHoyos v. Allstate Corp.*, 240 F.R.D. 269, 292 (W.D. Tex. 2007) ("The endorsement of class counsel is entitled to deference, especially in light of class counsel's significant experience in complex civil litigation and their lengthy opportunity to evaluate the merits of the claims."); *Cotton*, 559 F.2d at 1330 (recognizing that, because as class counsel tends to be the most familiar with the intricacies of a class action lawsuit and settlement, "the trial court is entitled to rely upon the judgment of experienced counsel for the parties").

Judge Phillips] were conducted at arm's length, were the product of rational compromise on the part of all involved, and were in no way collusive.").

Thus, the Settlement was informed by Plaintiffs and Lead Counsel's extensive knowledge of the facts of the case and the strengths and weaknesses of the claims and defenses asserted, and it was the product of several months of vigorous, arm's-length negotiations supervised and facilitated by an experienced mediator.

### 2. The Settlement's Terms Are Adequate and Equitable

Rules 23(e)(2)(C) and 23(e)(2)(D) direct the Court to evaluate whether "the relief provided for the class is adequate" and "the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(C)-(D). Here, the Settlement represents a very favorable result for the Settlement Class. Furthermore, Lead Counsel, with the assistance of Plaintiffs' damages consultant, have proposed a plan for allocating the Settlement proceeds that ensures all Settlement Class Members will be treated equitably relative to their respective losses.

### a. The Settlement Provides Substantial Relief, Especially in Light of the Costs, Risks, and Delay of Further Litigation

A key factor to be considered in assessing the approval of a class action settlement is plaintiff's likelihood of success on the merits, balanced against the relief offered in settlement. In making this assessment, the Court should consider "whether the settlement's terms fall within a reasonable range, given the likelihood of the plaintiffs' success on the merits." *Slipchenko v. Brunel Energy, Inc.*, 2015 WL 338358, at *11 (S.D. Tex. Jan. 23, 2015) (citation omitted); *see also Heartland*, 851 F. Supp. 2d at 1067 (this consideration "can take into account the challenges to recovery at trial that could preclude the class from collecting altogether, or from only obtaining a small amount") (citation omitted).

The Settlement provides for a cash recovery of $44,000,000. This is an excellent result in light of the circumstances of this case, including that the issuer of the securities forming the basis for the Action declared bankruptcy. Plaintiffs' damages consultant has estimated the maximum *theoretical* aggregate damages in this Action to be approximately $850 million. Using this theoretical number, the Settlement represents approximately 5% of the conceivable maximum damages. This is significantly more than the median recovery obtained in recent securities class actions in which a similar damages amount was at issue.[8]

But this theoretical maximum damages amount does not account in any way for the fact that Adeptus was bankrupt and thus not a potential source of recovery. Importantly, it also assumes that Plaintiffs would be able to prove damages based on *all five* alleged corrective disclosures and that they would not need to disaggregate, or parse out, confounding non-fraud related information on *any* of those dates. Plaintiffs, however, faced risk in proving all of those alleged corrective disclosures if the Action had continued. Indeed, Defendants argued that *none* of the alleged corrective disclosures caused damages arising from the alleged fraud—and vigorously argued that Plaintiffs had no chance in establishing at least four of the alleged corrective disclosures. If Defendants succeeded in having one or more of the alleged corrective disclosures dismissed at summary judgment, or succeeded in proving that Plaintiffs had to disaggregate purportedly

---

[8] *See* Stefan Boettrich & Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2018 Full-Year Review*, NERA Economic Consulting, Jan. 29, 2019 ("NERA Report"), at 35 (finding median settlement between 1996 and 2018 in securities cases with investor losses between $600 million and $999 million recovered 1.6% of investor losses and between $400 million and $599 million recovered 1.8% of investor losses). A copy of the NERA Report is attached to the Russo Declaration as Exhibit B. *See also In re Fed. Nat'l Mortg. Ass'n Sec., Derivative, & "ERISA" Litig.*, 4 F. Supp. 3d 94, 103 (D.D.C. 2013) (settlement value approximating "4-8% of the 'best case scenario' potential recovery" deemed reasonable); *In re China Sunergy Sec. Litig.*, 2011 WL 1899715, at *5 (S.D.N.Y. May 13, 2011) (noting that the average settlement in securities class actions range from 3% to 7% of the class's total estimated losses).

confounding information, damages would be smaller or even zero. By way of illustration, if Defendants' had prevailed in their argument that four out of the five alleged corrective disclosures did not cause Plaintiffs' or other Settlement Class Members' losses, leaving only the November 2016 disclosure, maximum recoverable damages would be an estimated $480 million. The Settlement represents approximately 9% of this damages amount, which still assumes success by Plaintiffs on all liability issues, including the stringent scienter standard. Accordingly, the recovery obtained here would be a good recovery in any securities litigation case, but is particularly outstanding in light of Adeptus's bankruptcy, which eliminated the Company as a potential source of recovery in this Action, and the other risks inherent to the case.

If the Action had continued, Plaintiffs and the Settlement Class would have faced numerous risks that could have precluded securing any recovery at all, let alone a recovery greater than the Settlement Amount. Indeed, the Settlement came at a moment of substantial uncertainty in the Action, with Plaintiffs' Motion to Certify and Defendants' Second Motions to Dismiss pending. Although Plaintiffs and their counsel were confident of their prospects of success on these motions, an adverse decision on either one could have drastically altered the scope of the class or the quantum of recoverable damages. And even if Plaintiffs succeeded in obtaining certification of the full class, they still faced likely summary judgment motions, *Daubert* motions, trial, and appeals.

More specifically, with respect to liability, Plaintiffs faced the substantial risk that they would be unable to establish that Defendants Hall, Fielding, and Cherrington knowingly or recklessly made material misrepresentations and omissions to the market during the Class Period, including in the offering documents for the relevant public securities offerings. Indeed, the Executive Defendants vigorously claimed that they made no misrepresentations and, even if they did, it was inadvertent and therefore they had no scienter. The Sterling Defendants claimed that

they had no control over Adeptus, pointing to their reduction in Adeptus holdings over the Class Period. Plaintiffs also faced the risk that they would be unable to prove that these Defendants sold Adeptus securities while in possession of material non-public information.

Defendants also had substantial affirmative defenses to liability. For example, Plaintiffs faced the risk that the Director Defendants and the Underwriter Defendants would prevail on their due diligence defense, which could have absolved them of liability under the Securities Act.

As noted above, Plaintiffs also would have confronted considerable risks in proving that Defendants' alleged misrepresentations and omissions caused Plaintiffs' and the Settlement Class's alleged losses, and in establishing damages and the amount thereof. For example, with respect to Plaintiffs' Section 11 claims under the Securities Act, Defendants repeatedly attacked whether Settlement Class Members could "trace" their purchases to an offering. Moreover, to prove loss causation and damages on Plaintiffs' other claims, Plaintiffs would have to rely on expert testimony. At trial, many crucial issues would thus turn on an unpredictable "battle of experts." *See In re Bear Stearns Cos., Inc. Sec. Deriv. and ERISA Litig.*, 909 F. Supp. 2d 259, 267 (S.D.N.Y. 2012) ("When the success of a party's case turns on winning a so-called 'battle of experts,' victory is by no means assured."). Even if Plaintiffs established Defendants' liability under the federal securities laws, damages would be significantly smaller or even zero if Defendants prevailed on their loss causation and damages arguments.

Finally, given Adeptus's bankruptcy filing during the pendency of the Action, as well as other facts learned through discovery, Plaintiffs faced the substantial risk that, even if they prevailed at trial, the Defendants found to be liable would be unable to satisfy the judgment entered by the Court. Meanwhile, each Defendant could potentially establish that their proportion of any liability was minute, which could cap their responsibility for damages at a relatively small amount.

In short, the Action presented unique recovery issues that further counsel in favor of a negotiated resolution.

The Settlement avoids all of these risks and achieves a substantial recovery without the need for prolonged and uncertain litigation. The Settlement also avoids the considerable expense of continued litigation, which could have gone through summary judgment, trial, and a lengthy appeals process. *See generally Klein v. O'Neal, Inc.*, 705 F. Supp. 2d 632, 651 (N.D. Tex. 2010) ("When the prospect of ongoing litigation threatens to impose high costs of time and money on the parties, the reasonableness of approving a mutually-agreeable settlement is strengthened.").

> **b.** **The Proposed Settlement Does Not Unjustly Favor Any Settlement Class Member**

The Court must also ultimately assess the Settlement's effectiveness in equitably distributing relief to members of the Settlement Class. Fed. R. Civ. P. 23(e)(2)(C)(ii). Here, too, the Court can readily find the Settlement will likely earn approval. The Plan of Allocation that Plaintiffs propose (the "Plan") provides for an effective means of distributing the Net Settlement Fund to the Settlement Class, and treats Settlement Class Members "equitably relative to each other" based on their transactions in Adeptus Class A common stock, as well as the specific claims they have under the federal securities laws. *See* Fed. R. Civ. P. 23(e)(2)(D).

An "allocation formula 'need only have a reasonable, rational basis, particularly if recommended by "experienced and competent" class counsel.'" *In re Dell Inc., Sec. Litig.*, 2010 WL 2371834, at *10 (W.D. Tex. June 11, 2010), *aff'd sub nom. Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632 (5th Cir. 2012) (citation omitted). Here, the Plan provides for distribution of the Net Settlement Fund to Settlement Class Members who submit timely and valid Claim Forms demonstrating a loss on their transactions in Adeptus Class A common stock purchased or otherwise acquired during the Class Period. The formula to apportion the Net

Settlement Fund among Settlement Class Members, which was developed in consultation with Plaintiffs' damages consultant, is based on the estimated amount of artificial price inflation in Adeptus Class A common stock over the course of the Class Period that was allegedly caused by Defendants' misconduct.

Further, the Plan apportions the Net Settlement Fund among Settlement Class Members based on when they purchased, acquired, and/or sold their Adeptus Class A common stock, including whether they purchased their shares in an offering or on the open market, and whether they purchased shares "contemporaneously" with certain sales of Adeptus Class A common stock by certain Defendants. For Settlement Class Members who have Section 11 and/or Section 20A claims, the Plan provides an appropriate enhancement to their Section 10(b) losses. *See In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 580 (S.D.N.Y. 2008) ("A reasonable plan may consider the relative strengths and values of different categories of claims."). This method ensures that Settlement Class Members' recoveries are based upon the relative losses they sustained, and eligible Settlement Class Members will receive a *pro rata* distribution from the Net Settlement Fund calculated in the same manner. *See, e.g.*, *OCA*, 2009 WL 512081, at *6 (granting final approval to settlement and plan of allocation that compensated claimants on a pro rata basis according to claimants' recognized loss); *Dell*, 2010 WL 2371834, at *10 (same).[9]

c.     **The Anticipated Request for Attorneys' Fees is Reasonable**

The Notice provides that Lead Counsel will apply for an award of attorneys' fees not to exceed 25% of the Settlement Fund, plus reimbursement of reasonable expenses. A fee of up to

---

[9]     The proposed Notice also explains that Lead Counsel's request for expenses may include a request for reimbursement of Plaintiffs' "reasonable costs and expenses . . . directly relating to the[ir] representation of the [Settlement Class]", as permitted by the PSLRA. *See* 15 U.S.C. § 78u-4(a)(4).

25% is reasonable here, and is supported by case law in this Circuit. *See, e.g.*, *Marcus v. J.C. Penney Co., Inc.*, 2017 WL 6590976, at *6 (E.D. Tex. Dec. 18, 2017), *adopted by* 2018 WL 307024 (E.D. Tex. Jan. 4, 2018) ("[i]t is not unusual for attorneys' fees awarded under the percentage method to range between 25% to 30% of the fund or more"); *Schwartz v. TXU Corp.*, 2005 WL 3148350, at *27 (N.D. Tex. Nov. 8, 2005) ("courts throughout this Circuit regularly award fees of 25% and more often 30% or more of the total recovery under the percentage-of-the recovery method").

A fee of up to 25% of the Settlement Fund would also befit the substantial risks that Lead Counsel undertook in expending enormous time, effort, and resources in pursuing the claims in this Action and obtaining the excellent recovery for the benefit of the Settlement Class. Further, Settlement Class Members will have an opportunity to weigh in on the fee request before the Settlement Hearing, where the Court will decide what that fee should be.

### d.    Plaintiffs Have Identified All Agreements Made in Connection with the Settlement

In connection with the Settlement, the Parties also have entered into a confidential Supplemental Agreement regarding requests for exclusion, dated November 26, 2019. *See* Stipulation ¶ 37. The Supplemental Agreement sets forth the conditions under which Defendants can exercise a right to withdraw from the Settlement in the event that requests for exclusion from the Settlement Class—i.e., opt-outs—exceed certain agreed-upon conditions stated in the Supplemental Agreement ("Termination Threshold").[10] As is standard practice in securities class actions, the Supplemental Agreement is not being made public solely to avoid incentivizing the

---

[10]    This type of agreement is standard in securities class actions and has no negative impact on the fairness of the Settlement. *See, e.g.*, *Hefler v. Wells Fargo & Co.*, 2018 WL 4207245, at *11 (N.D. Cal. Sept. 4, 2018) ("The existence of a termination option triggered by the number of class members who opt out of the Settlement does not by itself render the Settlement unfair.").

formation of a group of opt-outs who are motivated to exclude themselves for the sole purpose of leveraging the Termination Threshold to exact an individual settlement. *See N.Y. State Teachers' Ret. Sys. v. Gen. Motors Co.*, 315 F.R.D. 226, 240 (E.D. Mich. 2016), *aff'd sub nom. Marro v. N.Y. State Teachers' Ret. Sys.*, 2017 WL 6398014 (6th Cir. Nov. 27, 2017) ("The opt-out threshold 'is typically not disclosed and is kept confidential to encourage settlement and discourage third parties from soliciting class members to opt out.'") (citation omitted). Pursuant to its terms, the Supplemental Agreement may be submitted to the Court *in camera* or under seal.

In addition, as noted above, the Parties entered into a Term Sheet prior to the Stipulation that memorialized all material terms of their agreement in principle to resolve the Action. The Term Sheet has now been superseded by the Stipulation. The Stipulation, Supplemental Agreement, and Term Sheet are the only agreements concerning the Settlement entered into by the Parties.

## V.     THE PROPOSED SETTLEMENT CLASS SHOULD BE CERTIFIED

In connection with final approval, the Court will be asked to certify the Settlement Class— for settlement purposes only—pursuant to Rules 23(a) and 23(b)(3). At the preliminary approval stage the Court should determine whether it "will likely be able to" grant certification to the proposed Settlement Class at final approval. Fed. R. Civ. P. 23(e)(1)(B).

Courts have long acknowledged the propriety of a settlement class. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 619-22 (1997); *In re IMAX Sec. Litig.*, 283 F.R.D. 178, 186 (S.D.N.Y. 2012) (certification of a settlement class "has been recognized throughout the country as the best, most practical way to effectuate settlements involving large numbers of claims by relatively small claimants"). A settlement class, however, like all other certified classes, must satisfy the requirements of Rules 23(a) and 23(b), although the manageability concerns of Rule

23(b)(3) are not at issue. *See Amchem*, 521 U.S. at 593 ("[w]hether trial would present intractable management problems . . . is not a consideration when settlement-only certification is requested").

Here, the proposed Settlement Class is defined in the Stipulation as: all persons and entities who purchased or otherwise acquired Adeptus Class A common stock from June 25, 2014 through March 1, 2017, inclusive, and were damaged thereby.[11] *See* Stipulation ¶ 1(ww). The Settlement Class definition is consistent with that proposed in Plaintiffs' Motion to Certify. *See generally* ECF Nos. 180, 182. As demonstrated in Plaintiffs' Motion to Certify briefing and below, the proposed Settlement Class readily satisfies the requirements of Rules 23(a) and 23(b)(3).

## A.     The Settlement Class Satisfies Rule 23(a)'s Requirements

Certification is appropriate under Rule 23(a) if:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a); *see also Amchem*, 521 U.S. at 613. The Settlement Class satisfies each of these requirements.

*First*, Rule 23(a)(1), which requires a class to be "so numerous that joinder of all members is impracticable," is "assumed to have been met in class action suits involving nationally traded

---

[11]     Included in the Settlement Class are all persons and entities who purchased shares of Adeptus Class A common stock on the open market and/or pursuant or traceable to the July 29, 2015 and June 8, 2016 Offerings during the Class Period. The Settlement Class includes a subclass of all persons who purchased Adeptus Class A common stock contemporaneously with sales of Adeptus securities made or caused by Defendants Hall, Fielding, Cherrington, and the Sterling Defendants in connection with Adeptus's July 2015 and June 2016 secondary public offerings of Adeptus Class A common stock, and were damaged thereby (the "20A Sub-Class"). Excluded from the Settlement Class and 20A Sub-Class are Defendants, Adeptus's estate in bankruptcy (and its Litigation Trustee), Adeptus's Officers and directors, all Immediate Family Members, legal representatives, heirs, successors, or assigns of any of the foregoing, and any entity in which any Defendant or group of Defendants has or had during the Class Period a majority ownership interest. Also excluded from the Settlement Class are any persons and entities who or which exclude themselves by submitting a request for exclusion that is accepted by the Court.

securities"—as is the case here. *Marcus v. J.C. Penney Co., Inc.*, 2016 WL 8604331, at *1, 2 (E.D. Tex. Aug. 29, 2016), *adopted by* 2017 WL 907996 (E.D. Tex. Mar. 8, 2017). Adeptus Class A common stock was actively traded on the New York Stock Exchange throughout the Class Period and as of July 2016, Adeptus had 16,280,397 shares of common stock outstanding. ECF No. 203 at ¶ 399. For this reason, Settlement Class Members are likely to number in the thousands. *See Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 624 (5th Cir. 1999) (class of 100-150 members satisfied numerosity); *see also Levitin v. A Pea In The Pod, Inc.*, 1997 WL 160184, at *5 n.5 (N.D. Tex. Mar. 31, 1997) (numerosity satisfied where "1.25 million shares of stock were sold nationwide"). Therefore, Settlement Class Members are sufficiently numerous that joinder of all members would be impracticable, and numerosity is met.

*Second*, the threshold for the Rule 23(a)(2) commonality requirement "is not high," and "is met when there is at least one issue, the resolution of which will affect all or a significant number of the putative class members." *Marcus*, 2016 WL 8604331, at *3 (citation omitted); *see also In re Cobalt Int'l Energy, Inc. Sec. Litig.*, 2017 WL 2608243, at *2 (S.D. Tex. June 15, 2017) (commonality requires class members' claims share a common issue of law or fact "whose resolution 'will resolve an issue that is central to the validity of each [member's] claims in one stroke'") (citation omitted). The claims asserted in the Action present questions of law and fact common to all Settlement Class Members, including whether: (i) Defendants misstated or omitted material facts, including in the offering materials for Adeptus's Class A common stock; (ii) Defendants acted with scienter; (iii) Defendants' misstatements and omissions caused economic harm to the Settlement Class; (iv) the Executive and Sterling Defendants controlled Adeptus; and (v) the Executive and Sterling Defendants traded in possession of material non-public information. *See KB Partners I. L.P. v. Barbier*, 2013 WL 2443217, at *11 (W.D. Tex. June

4, 2013) (finding commonality where "every class member's allegations of securities fraud arise from the same basic set of facts"). Thus, commonality is satisfied.

*Third*, Rule 23(a)(3)'s typicality requirement is satisfied if plaintiff's claims "arise from a similar course of conduct and share the same legal theory" as the class. *Cobalt*, 2017 WL 2608243, at *2. "Like commonality, the test for typicality is not demanding. . . . The critical inquiry is whether the class representative's claims have the same essential characteristics of those of the putative class." *Marcus*, 2016 WL 8604331, at *3 (citation omitted). Here, Plaintiffs' claims are typical of those of other Settlement Class Members—they purchased Adeptus Class A common stock during the Class Period at prices allegedly inflated by Defendants' alleged misconduct and were harmed when the relevant truth was revealed. *See City of Pontiac Gen. Emps.' Ret. Sys. v. Dell Inc.*, 2018 WL 1558571, at *3 (W.D. Tex. Mar. 29, 2018) (typically met where plaintiff's and class's claims "arise from their investment in Dell stock during the Class Period and . . . was a result of Defendants' material misrepresentations"). Further, the proof that Plaintiffs would present to establish their claims would also prove the Settlement Class's claims. Thus, typicality is established.

*Fourth*, Rule 23(a)(4)'s adequacy prong "mandates an inquiry into the zeal and competence of the representative's counsel and into the willingness and ability of the representative to take an active role in and control the litigation and to protect the interests of absentees." *Id.*, at *4. This inquiry encompasses the class representatives, their counsel, and the relationship between the two, and "serves to uncover conflicts of interest between named parties and the class they seek to represent." *Marcus*, 2016 WL 8604331, at *3 (citation omitted). Based upon their substantial purchases of Adeptus Class A common stock and the losses they suffered as a result of Defendants' alleged misconduct, Plaintiffs' interests are directly aligned with the interests of other Settlement

Class Members, who were allegedly injured in the same manner, and they share the common objective of maximizing their recovery from Defendants. In addition, Plaintiffs are sophisticated, institutional investors which Congress deems particularly qualified to serve as class representatives. *See Netsky v. Capstead Mortg. Corp.*, 2000 WL 964935, at *5 (N.D. Tex. July 12, 2000) ("Congress has expressed its preference for securities fraud litigation to be directed by large institutional investors"). Lead Counsel also have substantial experience and expertise in complex civil litigation, particularly the litigation of securities class actions, and were fully capable of prosecuting this Action. *See generally* ECF No. 19, Exs. 7 and 8.

### B.     The Settlement Class Satisfies Rule 23(b)(3)'s Requirements

To certify a class under Rule 23(b)(3), a court must find that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and effectively adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Rule 23(b)(3) is "designed to secure judgments binding all class members save those who affirmatively elect[] to be excluded," where a class action will "achieve economies of time, effort, and expenses, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Amchem*, 521 U.S. at 614-15.

As discussed above, the common issues relating to Defendants' liability predominate over any individualized issues. Indeed, the Supreme Court has noted that predominance is "readily met" in securities fraud cases. *Amchem*, 521 U.S. at 625; *see also In re Elec. Data Sys. Corp. Sec. Litig.*, 226 F.R.D. 559, 570 (E.D. Tex. 2005) *aff'd, Feder v. Elec. Data Sys. Corp.*, 429 F.3d 125 (5th Cir. 2005) ("predominance is a test readily met in certain cases alleging consumer or securities fraud or violation of antitrust laws"). Here, Plaintiffs' Securities Act claims rest on a common set of misstatements and omissions in the offering documents and thus, turn, in large part, on the

common, class-wide question of whether the offering documents contained material misrepresentations or omissions. *See Cobalt*, 2017 WL 2608243, at *4 (predominance met in case asserting Securities Act claims). Similarly, the core liability issues of Plaintiffs' Exchange Act claims—falsity, materiality, scienter, and loss causation—are issues whose proof can be made on a classwide basis.[12]

This Action also is the superior method of litigating these claims. In assessing "superiority," courts evaluate: "(A) the class members' interest in individually controlling their separate actions, (B) the extent and nature of existing litigation by class members concerning the same claims, (C) the desirability of concentrating the litigation in the particular forum, and (D) the likely difficulties of managing a class action." *Elec. Data Sys.*, 226 F.R.D. at 570; Fed R. Civ. P. 23(b)(3). Each of these factors weighs in favor of superiority here. To date, only one other litigation has been filed challenging the same or similar conduct at issue in the Action. That action was filed on an individual basis and does not seek certification of an investor class. Given the significant settlement recovery in this Action, Adeptus's bankruptcy, and all of the challenges Plaintiffs encountered over the past three years of litigation, it is unlikely that other Settlement Class Members will have an interest in individually controlling a separate action. In addition, without

---

[12]    Materiality "is an objective [question], involving the significance of an omitted or misrepresented fact to a reasonable investor," thus "can be proved through evidence common to the class" and "is a common question[n] for purposes of Rule 23(b)(3)." *Amgen Inc. v. Conn Ret. Plans & Trust Funds*, 568 U.S. 455, 467 (2013). (citation omitted) (second alteration in original). The same is the case for loss causation, scienter, and falsity. *See Erica P. John Fund, Inc. Haliburton Co.*, 563 U.S. 804, 812 (2011) (loss causation "requires a plaintiff to show that a misrepresentation that affected the integrity of the market price *also* caused a subsequent economic loss," but need not be shown at the class certification stage) (emphasis in original); *Elec. Data Sys.*, 226 F.R.D. at 570 ("Here, the liability issues turn upon whether Defendants made materially false and misleading statements with the required scienter . . . . If Defendants are liable to [plaintiff] for these statements, they are liable to all other class members for the same statements, so common questions predominate").

the settlement class device, Defendants could not obtain a class-wide release, and therefore would have had little, if any, incentive to enter into the Settlement. And, certification of a class for settlement purposes will allow the Settlement to be administered in an organized and efficient manner.

In sum, for all of the foregoing reasons, and those previously briefed before the Court, the Settlement Class meets all of the requirements of Rules 23(a) and 23(b)(3). It is likely that, in connection with final approval of the Settlement, the Court will be able to certify the Settlement Class for purposes of settlement.

## VI. THE PROPOSED FORMS AND METHOD OF NOTICE TO THE SETTLEMENT CLASS SHOULD BE APPROVED

Rule 23(c)(2) requires notice to be "the best notice that is practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B). Further, notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950).

Here, as outlined in the Preliminary Approval Order, the Claims Administrator[13] will mail, by first-class mail or e-mail, the Notice and Claim Form to all Settlement Class Members who can be identified through reasonable effort, including through the list of Adeptus Class A common stock record holders during the Class Period to be provided by Adeptus's successor. To disseminate notice, the Claims Administrator will also utilize its proprietary list of banks, brokers,

---

[13] In connection with preliminary approval, Plaintiffs also request that the Court approve Lead Counsel's retention of A.B. Data Ltd. ("A.B. Data") as the Claims Administrator for the Settlement. Selected following a formal bidding process, A.B. Data is a nationally recognized notice and claims administration firm that has successfully administered numerous complex securities class action settlements. A copy of A.B. Data's résumé is attached as Exhibit C to the Russo Declaration. *See also* www.abdataclassaction.com.

and other nominees that purchase securities on behalf of beneficial owners ("Nominees"). In addition, the Summary Notice will be published in *The Wall Street Journal* and transmitted over *PR Newswire*, and the Claims Administrator will develop and maintain a dedicated case website (www.AdeptusHealthSecuritiesLitigation.com).[14]

Collectively, the proposed forms of notice advise recipients of, *inter alia*: (i) the nature of the Action; (ii) the definition of the Settlement Class; (iii) the Settlement Class's claims, issues, or defenses; (iv) the Settlement's terms; (v) the considerations that caused Plaintiffs and Lead Counsel to conclude that the Settlement is fair, reasonable, and adequate; (vi) the procedures for requesting exclusion from the Settlement Class or objecting to the Settlement; (vii) the procedures for entering an appearance through an attorney; (viii) the procedures for submitting a Claim; (ix) the binding effect of a class judgment; (x) the proposed plan for allocating the net proceeds of the Settlement; (xi) the date, time, and place of the Settlement Hearing; and (xii) how to obtain additional information regarding the Settlement.[15] The Notice also satisfies the PSLRA's additional requirements by stating: (i) the Settlement amount determined in the aggregate and on an average per share basis;[16] (ii) that the Parties do not agree on the average amount of damages

---

[14]     The Parties have also agreed that, no later than ten calendar days following the filing of the Stipulation, Defendants shall serve the notice required under the Class Action Fairness Act, 28 U.S.C. § 1715 (2005) *et seq*. *See* Stipulation ¶ 20.

[15]     *See Schwartz*, 2005 WL 3148350, at *11 (approving notice providing relevant information regarding how settlement funds will be allocated, the rights of class members to exclude themselves from the class and to object to the settlement, and the date of the fairness hearing, among other things).

[16]     As reported in the Notice, the average recovery per alleged damaged share of Adeptus Class A common stock would be approximately $0.89 per share before deduction of Court-approved attorneys' fees and expenses, and approximately $0.26 per share after deduction of attorneys' fees and expenses. As noted in the Notice, these recovery amounts are only estimates and individual recoveries may differ, depending upon when and at what price the Settlement Class Member purchased, acquired, and/or sold their shares of Adeptus Class A common stock, whether the shares were purchased in or traceable to the July 2015 or June 2016 offerings, and the total number and value of valid claims received.

28

per share that would be recoverable at trial; (iii) that Lead Counsel intend to apply for attorneys' fees and expenses (including the amount of such fees and expenses on an average per share basis); (iv) Lead Counsel's contact information; and (v) the reasons why the Parties are proposing the Settlement. 15 U.S.C. § 78u-4(a)(7).

This manner of providing notice, which includes notice by first-class mail or email to Settlement Class Members who can be reasonably identified, supplemented by publication and internet notice, represents "the best notice practicable under the circumstances" and satisfies the requirements of Rule 23, due process, and all other applicable laws and rules. *See*, *e.g.*, *OCA*, 2008 WL 4681369, at *14-16 (finding notice by publication and mail appropriate); *Schwartz*, 2005 WL 3148350, at *11 (same). Accordingly, Plaintiffs respectfully submit that the notice program proposed here is adequate and should be approved by the Court.

## VII.    PROPOSED SCHEDULE OF SETTLEMENT-RELATED EVENTS

Plaintiffs respectfully propose the below schedule for Settlement-related events. If the Court agrees with the proposed schedule, Plaintiffs respectfully request that the Court schedule the Settlement Hearing for a date 120 calendar days after the entry of the Preliminary Approval Order, or at the Court's earliest convenience thereafter.

| EVENT | PROPOSED DUE DATE |
|---|---|
| Deadline for mailing Notice and Claim Form to potential Settlement Class Members (Preliminary Approval Order, ¶ 7(b)) | 20 business days after the date of entry of the Preliminary Approval Order ("Notice Date") |
| Deadline for publishing the Summary Notice (Preliminary Approval Order, ¶ 7(d)) | 10 business days after the Notice Date |
| Deadline for filing papers supporting final approval of Settlement, Plan of Allocation, and motion for attorneys' fees and Litigation Expenses (Preliminary Approval Order, ¶ 27) | 35 calendar days prior to the Settlement Hearing |
| Deadline for receipt of exclusions or objections (Preliminary Approval Order, ¶¶ 14, 17) | 21 calendar days prior to the Settlement Hearing |

| EVENT | PROPOSED DUE DATE |
|---|---|
| Deadline for filing reply papers (Preliminary Approval Order, ¶ 27) | 7 calendar days prior to the Settlement Hearing |
| Settlement Hearing (Preliminary Approval Order, ¶ 5) | No earlier than 120 calendar days after entry of the Preliminary Approval Order, or at the Court's earliest convenience thereafter |
| Deadline for submitting Claim Forms (Preliminary Approval Order, ¶ 11) | 120 calendar days after the Notice Date |

## VIII.  CONCLUSION

For all the foregoing reasons, Plaintiffs respectfully request that the Court enter the proposed Preliminary Approval Order submitted herewith which will: (i) preliminarily approve the Settlement; (ii) approve the proposed manner and forms of notice to Settlement Class Members; (iii) appoint A.B. Data as the Claims Administrator; (iv) set a date and time for the Settlement Hearing to consider final approval of the Settlement and related matters, and grant such other and further relief as may be required.

Dated:  November 26, 2019        Respectfully submitted,

By: */s/ Clyde M. Siebman*
Clyde M. Siebman
Texas Bar No. 18341600
Elizabeth S. Forrest
Texas Bar No. 24086207
**SIEBMAN FORREST BURG
& SMITH, LLP**
Federal Courthouse Square
300 N. Travis Street
Sherman, Texas 75090
Tel: (903) 870-0070
clydesiebman@siebman.com
elizabethforrest@siebman.com

*Liaison Counsel for Plaintiffs and
the proposed Settlement Class*

George L. McWilliams
Texas Bar No. 13877000

**LAW OFFICES OF GEORGE L.
MCWILLIAMS, P.C.**
P.O. Box 58
Texarkana, Texas-Arkansas 75504
Tel: (870) 772-2055
Fax: (870) 772-0513
glmlawoffice@gmail.com

*Liaison Counsel for Plaintiffs and
the proposed Settlement Class*

Jeremy P. Robinson
(Admitted *pro hac vice*)
Abe Alexander
(Admitted *pro hac vice*)
**BERNSTEIN LITOWITZ BERGER
& GROSSMANN LLP**
1251 Avenue of the Americas
New York, New York 10020
Tel: (212) 554-1400
Fax: (212) 554-1444
jeremy@blbglaw.com
abe.alexander@blbglaw.com

*Counsel for Lead Plaintiffs ACERA and ATRS and
the proposed Settlement Class*

Gregory M. Castaldo
(Admitted *pro hac vice*)
Richard A. Russo, Jr.
(Admitted *pro hac vice*)
Justin O. Reliford
(Admitted *pro hac vice*)
Michelle M. Newcomer
(Admitted *pro hac vice*)
Evan R. Hoey
(Admitted *pro hac vice*)
**KESSLER TOPAZ MELTZER
& CHECK, LLP**
280 King of Prussia Road
Radnor, Pennsylvania 19087
Tel: (610) 667-7706
Fax: (610) 667-7056
gcastaldo@ktmc.com
rrusso@ktmc.com
jreliford@ktmc.com

mnewcomer@ktmc.com
ehoey@ktmc.com

*Counsel for Lead Plaintiffs ACERA and ATRS,*
*Plaintiff Miami and the proposed Settlement Class*

Matt Keil
Texas Bar No. 11181750
**KEIL & GOODSON P.A.**
406 Walnut Street
Texarkana, Arkansas 71854
Tel: (870) 772-4113
Fax: (870) 773-2967
mkeil@kglawfirm.com

*Additional Counsel*

**CERTIFICATE OF SERVICE**

I hereby certify that on November 26, 2019, all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF Filing System.

*/s/  Clyde M. Siebman*
Clyde M. Siebman